COOPER GAW & another *vs.* CHARLES S. ASHLEY & others.

Bristol. March 11, 1907. — April 2, 1907.

Present: KNOWLTON, C. J., HAMMOND, SHELDON, & RUGG, JJ.

*Municipal Corporations. Board of Health,* Municipal. *Mandamus.*

The board of health of a city, who are authorized to appoint a quarantine physician under an ordinance giving him a compensation fixed by the city council with the right in extraordinary cases to charge to the sick under his care for medicine and medical attendance such sums as the board of health may approve, have no power to appoint one of their own members such quarantine physician.

A petition for a writ of mandamus addressed to the mayor of a city ordering him to reinstate a public officer removed by him for an alleged cause, under a statute authorizing him to remove such officer for cause, can be granted only when there has been an arbitrary exercise of power and the cause alleged for the removal is frivolous or unreasonable and in law insufficient.

Where the mayor of a city has removed the members of the board of health of the city appointed by him under R. L. c. 75, § 9, for the cause that they unlawfully voted to appoint one of their own members quarantine physician under an ordinance giving him a compensation fixed by the city council with the right in extraordinary cases to charge to the sick under his care for medicine and medical attendance such sums as the board of health might approve, upon a petition by the removed members for a writ of mandamus addressed to the mayor ordering their reinstatement, if it appears that in many of the previous years the office of quarantine physician had been held by a member of the board elected by the board, and that the member of the board appointed quarantine physician by the petitioners had held both offices at the same time under like appointments in other administrations of the same mayor, although this is a matter which the mayor properly might consider in determining whether the act of the petitioners called for their removal, the cause of removal being legally sufficient this court cannot say that there was error of law in the finding of the mayor.

PETITION, filed February 9, 1907, by Cooper Gaw and Manuel V. Sylvia, appointed by the mayor of New Bedford under R. L. c. 75, § 9, members of the board of health of that city for a writ of mandamus ordering the mayor to restore them to their offices

as members of that board from which they alleged that he had removed them without cause.

The case came on to be heard before *Rugg,* J. upon the petition and answer and an agreed statement of facts. At the request of the parties the justice reserved it for determination by the full court, such order to be entered as law and justice might require.

The cause of removal assigned by the mayor as stated by him is quoted in the opinion.

The petitioners, at the hearing, admitted that they had voted for the petitioner Sylvia for the office of quarantine physician, that he was elected and that he held that office.

Sections 23 and 24 of chapter 19 of the New Bedford City Ordinances were put in evidence as follows:

"Sec. 23. The board of health shall appoint, to hold office at the pleasure of that body, a quarantine physician, whose duty it shall be, at such times as they shall direct, to visit every vessel arriving liable to quarantine; to direct in what manner she shall be cleansed, if necessary, and what articles from her shall be landed, washed, buried or destroyed, and what articles of cargo may be unladen; to direct the care and attendance of the sick, for whom he shall prescribe and supply medicine according to his best skill; to report every day to the board of health the condition of every sick person; to direct the pilots where, and in what particular place vessels shall be anchored, and to grant a certificate to any passenger by him discharged from quarantine, at any time before the discharge of the vessel in which such passenger arrived, and to give a certificate to the master of each vessel when, in his discretion, he shall think proper that such vessels be discharged from quarantine.

"The quarantine physician, whenever required by the board of health, or whenever he may consider it his duty so to do, shall report to them the state and condition of the hospitals and of the vessels at quarantine; and it shall be his duty to recommend from time to time such matters as he may deem expedient relative to all matters connected with the quarantine regulations and operations of the city.

"Sec. 24. The quarantine physician shall receive such compensation as the city council shall authorize; but such compen-

sation shall not preclude him, in extraordinary cases, from charging to the sick under his care for medicine and medical attendance such sums as the board of health may approve."

There was no evidence introduced at the hearing of any act on the part of either of the petitioners as members of the board of health other than in the matter of the vote and the acceptance of the position of quarantine physician as recited in the charges.

It was admitted at the hearing that since 1879, the time of the creation of the board, the office of quarantine physician had been in many of the years held by a member of the board, elected by the board, and that Sylvia had in other administrations of the respondent Ashley as mayor held the same position under the board of health, and that he had held his office as a member of the board of health in some years under the nomination of Ashley.

On February, 4, 1907, the respondent Ashley nominated the respondents Kirschbaum and Kennedy as members of the board of health in the place of the petitioners, which nominations were confirmed, and Kirschbaum and Kennedy took possession of the records and office of the board and excluded the petitioners.

The case was submitted on briefs.

*J. P. Doran, E. T. Bannon & J. E. N. Shaw*, for the petitioners.

*B. B. Barney*, for the respondents.

KNOWLTON, C. J. This is a petition for a writ of mandamus to compel the respondent Ashley, as mayor of the city of New Bedford, to restore the petitioners to office as members of the board of health of that city, and to restrain the other two respondents from interfering with the petitioners in the performance of their duties as members of this board.

The petitioners, after due hearing, were removed from office by the mayor, for a cause which he stated as follows: " Misuse of authority in the matter of an appointment of a subordinate and conduct in regard thereto prejudicial to the welfare of the public service and inconsistent with and contrary to public policy, — in that as members of said board you voted for and caused to be appointed as quarantine physician, said Manuel V. Sylvia, then a member of said board, in which position when so appointed the said Sylvia, under the city ordinances, was subject

to the orders and direction of said board of health and eligible to receive compensation for his services, and in addition might be permitted to charge to the sick under his care, for medicines and medical attendance, such sums as the board of health might approve, said board of health at the time of said appointment and thereafterwards until this date being all the while composed of said Sylvia, Gaw and Stetson, and no other persons." The quarantine physician is an officer who, by the terms of the ordinance, is to hold office during the pleasure of the board of health, and in the performance of his duties he is to be largely subject to their direction. Besides receiving a regular compensation from the city, he may charge the sick for medicine and medical attendance, in extraordinary cases, such sums as the board of health may approve.

The first question is whether, under the ordinance, the board of health lawfully and properly could elect one of themselves to this office. We are of opinion that they could not. The ordinance contemplates the existence of a relation between the physician and the board which requires that he shall not be a member of it. He is to make frequent reports to the board, and from time to time is to make recommendations. His charges to the sick are to be only such as the board approves. His personal interest in these charges is inconsistent with the proper performance of his duty, as a member of the board of health, to fix their amount, in the interest of the public and for the protection of his patients.

Under the R. L. c. 210, § 9, a member of either branch of the city council, or of a municipal board of a city, is not permitted to be personally interested directly or indirectly in a contract made by the city council, or either branch thereof; or by such board, or by authority derived therefrom, in which the city is an interested party. In R. L. c. 26, § 36, it is provided that "No member of the city council shall, during the term for which he was chosen, . . . be eligible to any office the salary of which is payable by the city." Assuming that neither of these statutes applies directly to the present case, yet the principle on which they are founded applies to this election by the board of health of one of their salaried members to an office for which he was to receive another salary, and in extraordinary

cases to charge for his services, upon implied contracts, such sums as he himself and his associates, in their supervisory capacity, should approve.

The provision of the R. L. c. 75, § 10, that the clerk of the board shall not be a member of it, does not imply that the physician and all other agents and assistants may be chosen from the members. In such a board there is no such apparent inconsistency between the duties of a recording officer and an ordinary member as necessarily to preclude the choice of a clerk from the members of the board. Were it not for this provision, such a choice might be made, as it may be made from the board of overseers of the poor. See R. L. c. 25, § 71. But the duties and relations of the quarantine physician in the present case are inconsistent with membership in the board.

It follows that we cannot set aside the action of the mayor. It cannot be said as matter of law that his action was without sufficient cause. It is only when there is an arbitrary exercise of power, and the cause alleged for the removal is frivolous or unreasonable and in law insufficient, that we can revise such official action. *Ayers* v. *Hatch*, 175 Mass. 489, 492. *Ham* v. *Boston Board of Police*, 142 Mass. 90, 95. *Matter of Guden*, 71 App. Div. (N. Y.) 422. *People* v. *Thompson*, 94 N. Y. 451. *People* v. *Mayor of New York*, 19 Hun, 441, 448. *State* v. *Common Council of Duluth*, 53 Minn. 238.

The fact that a similar choice of a quarantine physician had sometimes been made in former years does not enable us to say that the mayor's action was unauthorized. He well might have considered it in judging whether this recent act of the petitioners called for their removal. The cause which he gave being legally sufficient, we cannot say that there was error of law in his finding. *Ayers* v. *Hatch*, 175 Mass. 489, 492. *Hogan* v. *Collins*, 183 Mass. 43, 46.

*Petition dismissed.*