Commonwealth ex rel. McCreary *v.* Major,
Appellant.

356

Argued October 6, 1941. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

*John David Ray* and *J. H. Ward Hinkson,* for appellant.

*E. Y. Calvin,* with him *R. E. McCreary,* District Attorney, and *L. L. Ewing,* for appellee.

*Ellwood J. Turner,* for amici curiæ.

*David Getz,* for amicus curiæ.

OPINION BY MR. JUSTICE DREW, November 24, 1941:

The brief of appellant precisely states the question involved—"Can Council of a Third Class City legally appoint one of its members to the Board of a Municipal Authority formed by that City". The form of action is a quo warranto proceeding instituted in the name of the Commonwealth at the suggestion of the District Attorney of Beaver County, and is to determine the right of respondent, Glen W. Major, to the office of member of the Board of the Beaver Falls Municipal Authority which was formed under the provisions of the Act of June 28, 1935, P. L. 463, known as the "Municipality Authorities Act of one thousand nine hundred and thirty-five", as amended by the Acts of May 20, 1937, P. L. 739 and May 17, 1939, P. L. 167. He demurred to the suggestion, and after argument, the learned President Judge of the 53rd Judicial District, specially presiding, overruled the demurrer and entered a decree nisi removing respondent from the Board of the Authority. Later, respondent's exceptions were overruled by the court en banc and a final judgment of ouster was entered. This appeal was then taken.

The facts are not controverted and they are as follows: Respondent was duly elected a councilman of Beaver Falls, a city of the third class in Beaver County, to serve for a term of four years, commencing January 1, 1940, which office he continues to hold. On June 14, 1940, by the unanimous vote of respondent, and the three other members of Council, L. W. Kelly, Sam Arent, and Ed. A. Sahli (the mayor being absent due to illness), there was enacted Ordinance No. 838 by the terms of which the

Beaver Falls Municipal Authority was established, and respondent, Kelly, Arent and Sahli, together with one J. Douglass Brooks, a non-member of the Council, were named as the members of the Board of the Authority to serve for terms of five, four, three, two and one years, respectively. Each councilman voted for himself, the other members of Council, and Brooks. Respondent and the other three members of Council served both as councilmen and as members of the Board from the time a charter for the Authority was issued by the Department of State of the Commonwealth of Pennsylvania on July 3, 1940, until the rendition of the decision in this case by the learned court below. Thereafter, as stated at the oral argument and in the brief of appellee, Arent and Kelly resigned from the Authority Board.

That a member of the Board of the Authority is a public officer cannot seriously be questioned. "To constitute a public office, it is essential that certain independent public duties, a part of the sovereignty of the State, should be appointed to it by law, to be exercised by the incumbent in virtue of his election or appointment to the office thus created and defined. . . .": *Kosek v. Wilkes-Barre Twp. Sch. Dist.*, 110 Pa. Superior Ct. 295, 301. Thus, since the Authority is an agency of the Commonwealth *(Tranter v. Allegheny Co. Authority,* 316 Pa. 65, 78), and the members of the Board of the Authority, who, by virtue of their appointment, independently perform essential governmental functions, they are public officers. In defining these Authorities, it was stated, in *Lighton v. Abington Twp.,* 336 Pa. 345, 354: "They are public corporations, being corporate agencies engaged in the administration of civil government. The state may modify the part performed by its agencies in government by creating other agencies, subject always to constitutional limitations." That such Board members are public officers is further emphasized by the following provisions of section 15 of the "Municipality Authorities Act of one thousand nine hundred and thirty-five", as

amended: "The effectuation of the authorized purposes of Authorities, created under this act, shall and will be in all respects for the benefit of the people of the Commonwealth of Pennsylvania for the increase of their commerce and prosperity and for the improvement of their health and living conditions, and *since such Authorities will be performing essential governmental functions in effectuating such purposes,* such Authorities shall not be required to pay any taxes or assessments upon any property acquired or used by them for such purposes, and the bonds issued by any Authority, their transfer, and the income therefrom (including any profits made on the sale thereof), shall at all times be free from taxation within the Commonwealth of Pennsylvania." (Italics added). Therefore, the office challenged in the writ is a public one, and the court below, on the suggestion of the District Attorney, had jurisdiction.

We are fully conscious of the great import of the question here for our determination, not only to the Beaver Falls Municipal Authority, which by resolution, adopted on August 27, 1940, authorized the purchase of the Beaver Falls Water Company, the corporation supplying water to the City of Beaver Falls and other municipalities in Beaver County, at a price of $4,300,000, but also to other Authorities established by numerous municipalities throughout the Commonwealth. We thoroughly examined the record in the instant case and reviewed the law applicable to its facts, and in addition, carefully considered the briefs of able counsel for the parties, the Pennsylvania State Association of Boroughs, and the Central Delaware County Authority and Darby Creek Joint Authority, filed amici curiæ. We have had no difficulty in reaching our conclusion and are unanimously of opinion that well-established public policy prohibits respondent and his colleagues from using their official appointing power as councilmen of the City of Beaver Falls to appoint themselves members of the Board of the Authority. This Court said, as early

as 1803, in *The Commonwealth v. Douglass,* 1 Binney 77, 84: "One having a discretionary authority to appoint a fit person to a public office appointing himself, seems a solecism in terms; and it cannot be deemed a fulfillment of his duty." For this reason, if for no other, the learned court below properly ousted respondent and the other three councilmen from membership on the Board of the Authority. They took separate appeals to this Court, but that of respondent is the only one remaining, discontinuances having been entered by the other three councilmen prior to the argument of this appeal.

The power of the court to determine what is against public policy, in a proper case, is well recognized. We said in *Mamlin v. Genoe,* 340 Pa. 320, 325: "It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring. There must be a positive, well-defined, universal public sentiment, deeply integrated in the customs and beliefs of the people and in their conviction of what is just and right and in the interests of the public weal." That there is "a virtual unanimity of opinion" among all reasonable men that it is against public policy for a public official to appoint himself to another public office within his gift is beyond all question. Courts, not only of this Commonwealth, but of every other jurisdiction known to us, have uniformly held that personal interest of a public officer creates disqualification. In this connection, we said, in *Commonwealth v. Raudenbush,* 249 Pa. 86, 88-89: "A member of a municipal council is disqualified from voting in proceedings involving his personal or pecuniary interest: 20 Am. & Eng. Ency. of Law (2d Ed.), 1214 . . . It is against public policy for a representative of a municipality to vote in its legislative body on any matter which affects him individually. . . . A councilman cannot vote on any contract or measure in which he is pecuniarily interested. This was the rule of

the common law and statutes have been enacted in most jurisdictions forbidding such voting. A councilman cannot act for the municipality and at the same time act for himself individually. He cannot serve two masters at the same time. He is a trustee for the municipality and he may not deal with himself in any matter which concerns it." See also *Reckner v. German Twp. S. D.,* 341 Pa. 375; *Parrish v. Town of Adel,* 144 Ga. 242, 86 S. E. 1095; *Hornung v. State ex rel. Gamble,* 116 Ind. 458, 19 N. E. 151; *State v. Dean,* 103 Kan. 814, 176 P. 633; *Pulaski County v. Sears,* 117 Ky. 249, 78 S. W. 123; *Gaw v. Ashley,* 195 Mass. 173, 80 N. E. 790; *Kinyon v. Duchene,* 21 Mich. 498; *Grimes v. Miller,* 113 N. J. L. 553, 175 A. 152; *People v. Pearson,* 121 Misc. 26, 200 N. Y. S. 60; *State ex rel. Louthan v. Taylor,* 12 Ohio State 130; *State v. Hoyt,* 2 Ore. 246; 46 Corpus Juris, p. 940, section 43; McQuillin on Municipal Corporations, Second Ed., Revised Vol. 2, par. 477, p. 159. Furthermore, even if respondent had not voted for his own appointment, for the other members of Council of which he was a member to have placed him on the Board of the Authority would, nevertheless, still have been definitely against public policy: *Meglemery v. Weissinger,* 140 Ky. 353; *Wood v. Town of Whitehall,* 120 Misc. 124, 197 N. Y. S. 789.

A careful reading of the "Municipality Authorities Act of one thousand nine hundred and thirty-five", as amended, under the provisions of which the Authority here under consideration was created, reveals not the slightest indication of an intention on the part of the legislature to waive this sound principle of law and morals. While it cannot be questioned that the General Assembly has the inherent power to declare the public policy of the Commonwealth and may confer upon members of Council of municipalities power to appoint themselves to membership upon Boards of Authorities and to fix their own salaries, such grant of power must be strictly construed, and unless the intention is clear, the

362

power will be denied, because of its exceptional and extraordinary character.' We said, in this connection, in the recent case of *Reckner v. German Twp. S. D.,* supra (p. 378) : "It necessitates an explicit direction on the part of the legislature to overthrow such a wholesome and salutary rule of the common law as that precluding a public servant from simultaneously representing both himself and his constituents. As pointed out in *Goodyear v. Brown,* 155 Pa. 514, 518: '. . . it does not follow that everything may be done by a public officer that is not forbidden in advance by some act of assembly.' " See also McQuillin on Municipal Corporations, Second Ed., Revised Vol. 2, pp. 306-307.

Not only is there no express provision in the "Municipality Authorities Act of one thousand nine hundred and thirty-five", as amended, granting such power to members of Council, but a most casual examination of this legislation readily discloses that no such extraordinary power, as that claimed by respondent, was impliedly intended to be conferred upon Council of a municipality. Particularly is this made evident since the municipality and the Authority are definitely intended to be separate and distinct entities. That this is so, is clearly shown by the dealings set forth in the statute to be had between these two corporations. Section 4 provides, inter alia, for the making of contracts between the municipality and the Authority; section 7 directs that the municipal authorities shall make appointments of members to the Board of the Authority and fix their salaries; section 8 sets forth that the persons who audit the accounts of the Authority are to be "The controller, auditors or account- ant designated by the municipality"; and section 9 pro- vides for the transfer of facilities to the Authority "upon such terms and conditions as are mutually satisfactory to the Authority and the corporate authorities of . . . any such city, borough, or township . . ." The legisla- ture certainly did not intend that public officials could use their offices to appoint themselves to other public

offices, fix their own compensation, contract with themselves, and audit their own accounts. That the Board of the Authority and Council of the municipality were to be independent of each other is further made clear by the other provisions of section 7 of the statute, which direct that members of the Board may not be removed even for cause by the municipality, but this can only be done by the Court of Quarter Sessions.] * * *

There is no merit in the contention that since the legislature specifically provided in the Act of June 28, 1935, P. L. 452, known as the "General State Authority Act of one thousand nine hundred and thirty-five", and the Act of May 28, 1937, P. L. 955, known as the "Housing Authorities Law", that certain public officials could or should serve upon the Boards of those particular Authorities, it was, therefore, the implied intention of the lawmakers to permit councilmen to serve on Boards of Authorities created under the provisions of the "Municipality Authorities Act of one thousand nine hundred and thirty-five." Obviously the legislature was cognizant of the well-settled principle of law that unless it expressly provided that public officials could or should serve upon such Authority Boards, public policy would prohibit them from doing so. Therefore, such authority was specifically conferred under the provisions of the "General State Authority Act of one thousand nine hundred and thirty-five" and the "Housing Authorities Law", which statutes also directed that members of those Boards should receive no compensation for their services. Nor is respondent's contention rendered any more tenable even if he be willing to forego, while a member of Council, all compensation which the "Municipality Authorities Act of one thousand nine hundred and thirty-five" directs Board members "shall" receive. If the legislature had intended that a councilman could serve by waiving his compensation, it would have specifically so provided.

Moreover, we cannot agree with the argument that since the statute, under which the Authority was created,

establishes a method for removal of a Board member, such remedy must be followed in the instant case, and for that reason quo warranto is not the proper proceeding. Section 7 of the "Municipality Authorities Act of one thousand nine hundred and thirty-five", as amended, provides: "A member may be removed for cause by the court of quarter sessions of the county in which the Authority is located, after having been provided with a copy of the charges against him for at least ten days, and full hearing by the court." Obviously this provision is intended only to be applicable to a situation where the Board member is charged with the commission of an act, while lawfully holding the office, which would warrant his removal. In the instant case, however, Glen W. Major's right to the office is in question, since it is claimed that his appointment was illegal, and therefore quo warranto is the only proper proceeding in which to try title to this public office: *Driskel v. O'Connor,* 339 Pa. 556, 558-559.

Respondent was properly ousted from the office of member of the Board of the Authority because he had no legal right to serve upon that Board. It is clear, however, that during the period he and his colleagues assumed to exercise the functions of members of the Board they did so under color of authority, and for that reason were de facto officers of the Authority while so serving. It follows that their acts as members of the Authority for proper corporate purposes are valid so far as respects the public: *Commonwealth v. Snyder,* 294 Pa. 555, 559.

Since it is clearly against public policy for respondent, under the circumstances here presented, to serve upon the Board, we deem it unnecessary to discuss or to decide at this time the other matters advanced by the learned court below in directing the removal of respondent from the Board of the Authority.

Judgment affirmed.