## Hendricks v. East Rockhill Township

*Biehn & Thatcher,* for plaintiff.
*J. Lawrence Grim, Jr.,* for defendant.

GARB, *J.,* March 9, 1977—This is an action in equity in which plaintiff, a resident and taxpayer of the Township of East Rockhill, Bucks County, Pa., seeks to enjoin the said township from paying premiums for the purchase or maintenance of a

pension plan for the elected supervisors of the township, and, further, to require that the supervisors demand a refund of all premiums paid to date on said pension plan. A complaint and answer have been filed, the deposition of the township secretary taken and an affidavit of the three township supervisors filed. Thereafter, a motion for summary judgment was filed by plaintiff and the matter has been praeciped before the undersigned under and pursuant to Bucks County Rule of Civil Procedure *266.

As has so often been stated, a summary judgment can be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law: Toth v. Philadelphia, 213 Pa. Superior Ct. 282, 247 A.2d 629 (1968). The burden of demonstrating that no genuine issue of material fact exists is on the moving party and the record must be examined in the light most favorable to the nonmoving party: Schacter v. Albert, 212 Pa. Superior Ct. 58, 239 A.2d 841 (1968). The court must accept as true all well-pleaded facts in the nonmoving party's pleadings and other proper evidence submitted in response to the motion, giving them the benefit of all reasonable inferences to be drawn therefrom: Toth v. Philadelphia, supra. In passing upon a motion for summary judgment, the trial court's function is not to decide issues of fact, but solely to determine whether there is an issue of fact to be tried. All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party: Schacter v. Albert, supra. Finally, a summary judgment should be

granted only when a case is clear and free from doubt: McFadden v. American Oil Company, 215 Pa. Superior Ct. 44, 257 A.2d 283 (1969), and Ritmanich v. Jonnel Enterprises, Inc. 219 Pa. Superior Ct. 198, 280 A.2d 570 (1971). See also Wade v. Heisey, 243 Pa. Superior Ct. 8, 364 A.2d 423 (1976); Bollinger v. Palmerton Area Communities Endeavor, Inc., 241 Pa. Superior Ct. 361, 341 A.2d 676 (1976).

Virtually all of the operative facts necessary to decision herein are stated in the complaint and admitted by the answer. Therefore, we are satisfied that there are no factual matters in dispute and that this matter is ripe for summary judgment.

As stated, plaintiff is an adult individual, a resident and taxpayer of East Rockhill Township. The township is a second class township generally governed by a board of three supervisors. On April 9, 1973, at the regular meeting of the township supervisors, they passed a motion unanimously adopting a pension plan for the benefit of the supervisors. The premium for such plan was to be paid out of, and from, the Federal revenue sharing account. On May 14, 1973, at the next regular meeting of the board of supervisors the pension plan, as approved on April 9, 1973, was amended to the effect that the premium for the said pension plan was to be paid from the general revenue fund of the township and not from the Federal revenue sharing account. Pursuant to the foregoing action of the board of supervisors, a pension plan was, in fact, purchased from the Columbia Life Insurance Company at Bloomsburg, Pa. By check dated May 21, 1973, the township paid the sum of $2,096.08 for the first annual premium of the aforesaid pen-

sion plan. By check dated May 31, 1974, the township paid the sum of $2,096.08 for the second annual premium on said plan. By check dated April 24, 1975, the township paid the sum of $2,110.75 for the third annual premium for the said plan. The said plan remains in full force and effect to the present date. The auditors of defendant township did not establish the enacted pension plan, nor fix the annual premium payment, nor fix amounts to be paid in the firm of benefits, nor determine who would be eligible to become beneficiaries of the said plan. The only beneficiaries of said plan are the three township supervisors. Lastly, by resolution of the board of supervisors, each of them individually has been appointed as roadmaster for the said township and their compensation as such had been fixed at $5 per hour from 1973 through 1976 and at $6 per hour thereafter by the board of township auditors.

The question for decision herein is whether the township supervisors may lawfully enact and adopt a pension insurance policy for themselves to be paid for by the funds of the township. In determining this question, we begin with the legal premise that a second class township is a political subdivision of the Commonwealth and has, therefore, only those powers which are granted it by the Legislature. See Commonwealth v. Hanzlick, 400 Pa. 134, 161 A.2d 340 (1960).

The answer to the foregoing question lies in the construction of the second class township code and specifically the Act of May 1, 1933, P.L. 103, as amended by the Acts of January 26, 1966, P.L. (1965) 1619, sec. 1, and June 26, 1975, P.L. 34 (No. 17), sec. 1, 53 P.S. §65713. In relevant part thereof, in enumerating the various powers of the board of township supervisors, it is provided as follows:

"To expend out of the general township fund such amount as may be necessary to secure workmen's compensation insurance for its employes, including volunteer firemen of companies duly recognized by the township by motion or resolution, killed or injured while going to, returning from, or attending fires in said township or territory adjacent thereto, or while performing any other duties authorized by the township; to make contracts of insurance with any fire insurance company, duly authorized by law to transact business in the Commonwealth of Pennsylvania, on any building or property owned by such township, to make contracts with any insurance company, so authorized, insuring any public liability of the township, including insurance on every township officer, official, and employe for liability arising from errors and omissions in the performance of their duties except that liability of elected or appointed officials or officers for surcharge in accordance with law shall not be affected hereby; and to make contracts of insurance with any insurance company, or nonprofit hospitalization corporation, or nonprofit medical service corporation, authorized to transact business within the Commonwealth, insuring its employes, and/or their dependents, or any class or classes thereof, under a policy or policies of group insurance covering life, health, hospitalization, medical service, or accident insurance, and may contract with any such company, granting annuities or pensions, for the pensioning of such employes, and for such purposes, may agree to pay part or all of the premiums or charges for carrying such contracts, and may appropriate out of its treasury any money necessary to pay such premiums, or charges, or portions thereof. The supervisors are hereby au-

thorized, enabled and permitted to deduct from the employe's pay, salary or compensation such part of the premium, or charge, as is payable by the employe, and as may be so authorized by the employe in writing."

It is readily apparent from the foregoing Act of Assembly that the legislature has recognized and drawn a distinction between employes of the township and township officers and officials. The Act of Assembly specifically provides that the township may secure workmen's compensation insurance for its employes and volunteer firemen and public liability insurance "on every township officer, official, and employe for liability arising from errors and omissions in the performance of their duties in the course of their employment." In providing for annuities or pensions, the act specifically provides that the township may do so "for the pensioning of such employes," specifically omitting from that grant of authority the right to expend funds out of the general township coffers for annuities or pensions for township officers or officials. In construing this Act of Assembly and every provision thereof, we can only conclude that the legislature intended to grant the authority to the board of township supervisors to provide liability insurance for township officers and officials and, further, to provide that the furnishing of all other types of insurance specifically enumerated in the Act of Assembly and, in particular to this case, annuities or pensions, only for the benefit of employes.

Defendant does not seriously contest the foregoing construction of the Act of Assembly. Without engaging in the semantic argument of what constitutes a "employe" for this purpose, defendant

contends that all of the supervisors were, in fact, employes of the township when they were denominated roadmasters for the township. However, this argument falls short of the mark when we consider two other sections of the Second Class Township Code. The Act of July 2, 1953, P.L. 328, sec. 1, 53 P.S. §65514, provides, in relevant part, as follows:

"The board of township supervisors, immediately after their organization, shall divide the township into one or more road districts. They shall employ a superintendent for the entire township or a roadmaster for each district. Every superintendent and roadmaster, so employed, must be a person physically able to work on and maintain the roads. Township supervisors may require such superintendents or roadmasters to give bond, with a surety company or other company authorized by law to act as surety, for the faithful performance of their duties. The superintendent or roadmasters shall be subject to removal by the board of supervisors. The supervisors shall fix the wages to be paid, either per hour, per day, per week, semimonthly or monthly, to the superintendent or roadmasters and laborers for work on the roads and bridges, which wages shall not exceed wages paid in the locality for similar services.

"This section shall not prohibit the township supervisors from being employed as superintendents or roadmasters, or as laborers, if physically able to work on and maintain the roads. In such cases they shall not employ a superintendent or roadmasters and their compensation shall be fixed as hereinafter provided."

The provisions of the foregoing Act of Assembly regarding compensation provides that the com-

pensation of supervisors who appoint themselves roadmasters shall be fixed as hereinafter provided. The Act of Assembly regarding compensation of supervisors as most recently amended by the Act of November 2, 1973 (No. 105), sec. 1, 53 P.S. §65515, provides, in relevant part, as follows:

"Supervisors may receive from the general township fund, as compensation, twenty-five dollars for each meeting which they attend. The compensation of supervisors, when acting as superintendents, roadmasters or laborers, shall be fixed by the township auditors either per hour, per day, per week, semi-monthly or monthly, which compensation shall not exceed compensation paid in the locality for similar services, and such other reasonable compensation for the use of a passenger car
. . ."

Reading these two acts together, we learn that supervisors receive compensation for their duties as supervisors in the sum of $25 for each meeting which they attend.[1] Furthermore, we learn that they may appoint roadmasters and fix proper compensation for them. We further know that the supervisors may appoint themselves as roadmasters, but when they do so the compensation of roadmasters must be fixed by the board of auditors. In each case, whether the supervisors appoint independent roadmasters or appoint themselves as roadmasters, the language used for determining proper and appropriate compensation is exactly the same, regardless of whether it is fixed by the supervisors for independent roadmasters or

1. The supervisors may not award additional compensation to themselves for any other services they may render to the township: Cotlar v. Warminster Township, 8 Pa. Commonwealth Ct. 163, 302 A.2d 859 (1973).

the auditors for supervisor-roadmasters. It is clear, from this, that the legislature intended that the supervisors may fix proper and adequate compensation for roadmasters when they appoint independent roadmasters as they may for any other proper and appropriate township employes, but when they appoint themselves as roadmasters, the compensation must be fixed by the board of auditors. It is abundantly clear that the compensation of supervisors, when acting as superintendents, roadmasters or laborers, shall be fixed by the township auditors either per hour, per day, per week, semi-monthly or monthly, which compensation shall not exceed compensation paid in the locality for similar services. See Cotlar v. Warminster Township, supra. It is conceded by defendant that the pension plan as adopted by the supervisors is, in fact, additional compensation but, it is argued, in spite of the fact that the pension plan was adopted for the benefit of the supervisors, not mentioning their status as roadmasters, that it was intended for them as roadmasters as employes of the township. Such being the case, it is clear that such compensation could only be fixed by the auditors and it was not done so in this case. The mere fact that the auditors never affirmatively objected to the purpose of the pension plan is not tantamount to the affirmative action of the auditors in fixing the compensation for the supervisors and roadmasters additionally to the compensation already fixed at $5 and later $6 per hour.[2] Therefore, we can only conclude that the supervisors exceeded their authority in adopting and purchasing a pen-

2. We do not address herein whether the pension plan would constitute compensation which does not exceed compensation paid in the locality for similar services.

sion and annuity plan for their own benefit as additional compensation for their services as either supervisors or as supervisor-roadmasters. See Commonwealth v. Hanzlick, supra.

In adopting this statutory scheme regarding compensation of township supervisors, the legislature has acknowledged and adopted the long-standing public policy consistently announced by the courts of this Commonwealth. In Commonwealth v. Raudenbush, 249 Pa. 86, 94 Atl. 555 (1915) the question was whether a member of borough council could cast a vote on a matter of pecuniary interest to himself involving his own appointment as an employe of the borough. In that case, the court held that there is a general rule of law that no member of the governing body shall note on any question involving his own character or conduct, his right as a member, or his pecuniary interest, if that be immediate, particular and distinct from the public interest. A member of a municipal council is disqualified from voting in proceedings involving his personal or pecuniary interest. "A councilman cannot act for the municipality and at the same time act for himself individually. He cannot serve two masters at the same time. He is a trustee for the municipality and he may not deal with himself in any matter which concerns it. His cestui que trust has the right to his best judgment in everything that appertains to its business or welfare unaffected and unprejudiced by anything which might enure to his own interest as an individual.": Commonwealth v. Raudenbush, ibid.

341 Pa. 375, 19A.2d 402 (1941), in determining whether a member of the school board of a third class school district may legally cast a deciding

vote in favor of a resolution of the board increasing his own salary as secretary thereof, it was held that the statute did not reveal any indication whatsoever that it was the legislative intent to abrogate the well-founded and long-established public policy that one who has a direct personal interest in a matter under consideration by a representative public agency of which he is a member is disqualified from voting thereon, and if his vote is determinative, the action taken is void. The court therein cites Commonwealth v. Raudenbush, supra, for the legal rubric as heretofore set forth.

The foregoing statement of the law as contained in Commonwealth v. Raudenbush, supra, was once again followed in Commonwealth ex rel. McCreary v. Major, 343 Pa. 355, 22A.2d 686 (1941), in determining that the council of a third class city may not legally appoint one of its members to the board of a municipal authority formed by that city council. The court therein held that well-established public policy prohibits members of council from using their official appointing power as councilmen of the City of Beaver Falls to appoint themselves members of the board of the authority. The Supreme Court in Meixell v. Hellertown Borough Council, 370 Pa. 420, 88A.2d 594 (1952), in citing Reckner, Raudenbush and McCreary, ruled on the propriety of borough council appointing one of their own members as burgess of the borough. The same authority was once again cited with approval in Eways v. Reading Parking Authority, 385 Pa. 592, 124 A.2d 92 (1956).

Finally in Genkinger v. New Castle, 368 Pa. 547, 84A.2d 303 (1951), the court, in reliance upon Reckner, Raudenbush and McCreary, held that

under the third class city law city council could not enact a pension plan for city council members beyond the specific permissive provisions of the third class city code in that regard.[3]  Lastly, the mere fact that the Board of Township Supervisors acted in reliance upon advice of its solicitor in enacting the pension plan now before us, and, further, that the individual members of the board of supervisors actually earned the additional compensation contained in the pension plan by virtue of their functions as roadmasters, is totally irrelevant to the determination of this case. See Cotlar v. Warminster Township, supra.

## ORDER

And now, March 9, 1977, it is hereby ordered, directed and decreed that summary judgment shall be entered in favor of plaintiff and against defendant and specifically it is ordered as follows:

---

3. This case is closely on point, because it involves the enactment of a pension plan for members of city council and the question of whether city council can enact such a pension plan as additional compensation for themselves. Although some portions of the pension plan were allowed, the court held that city council members could enact such a plan only to the extent that it is specificially permitted by the Act of Assembly. The Act of Assembly permitting the enactment of pension plans by third class city council is distinctly and substantively different from the Act of Assembly with which we are concerned in this case. The Third Class City Code then in effect expressly permitted such a city to include a pension plan for "officers or employes" of the city. The current act in this regard, Act of March 25, 1970, P. L. 225 (No. 92), sec. 1, 53 P. S. § 37403(53), permits such pension plans for "appointed officers, officials and employees." By negative inference, it may be assumed that the legislature intended to exclude "appointed officers and officials" from the similar grant of authority in the Second Class Township Code.

(A) An injunction is issued restraining defendant from paying premiums for the purchase or maintenance of the pension plan heretofore adopted for the elected township supervisors.

(B) Defendant is directed to demand the refund of all premiums paid to date for the purchase of said policy.