432 A.2d 173

CONSUMERS EDUCATION AND PROTECTIVE
ASSOCIATION, et al.,

v.

George X. SCHWARTZ, et al.

Supreme Court of Pennsylvania.

Argued May 18, 1981.

Decided July 8, 1981.

Nix, J., dissented and filed opinion.

David Kairys, Peter Goldberger, Philadelphia, for appellants.

Alan Davis, Arlan Spector, Philadelphia, for appellees.

Before ROBERTS, NIX, LARSEN, FLAHERTY, KAUFFMAN and WILKINSON, JJ.

## OPINION

KAUFFMAN, Justice.

Appellants challenge the order of the Commonwealth Court upholding the validity of salary increases for members of the Philadelphia City Council ("Council") and other elected officials authorized by a 12–0 vote of Council on December 20, 1979.[1] Eight Council members voting on Bill No. 2357 ("the Salary Bill") had been re-elected approximately six weeks earlier in the November, 1979 election for the term in which the pay raise would be effective.[2] At issue is the legality of a Salary Bill adopted *after* the election of the officials whose pay would be increased thereunder during the term for which they were elected. We hold that the Act of 1927, which remains in full force and effect as to Philadelphia, clearly and unambiguously prohibits any such salary increase and thus renders the Salary Bill null and void.[3]

1. Appellants are (1) associations and organizations: Consumers' Education and Protective Association, Consumer Party, Tenant Action Group, Puerto Rican Alliance, Residents' Coalition, Raymond Rosen Direct Action Alliance, North Central Revitalization Coalition; and (2) individual taxpayers and residents of Philadelphia: Lee Frissell, Max Weiner, John Brickhouse, Maisha Jackson, Eva Gladstein, Juan Ramos, Ralph Wynder, Fr. Joseph Kakalec, Shaheed Abdul-Haqq, and Ralph Goldstein.

2. Without these eight votes, the Salary Bill would not have been adopted. Council then consisted of thirteen members. Those voting in favor of the Salary Bill were Council members Coleman, Greenberg, Jannotti, Johanson, Kelly, Murray, Pearlman, Rafferty, Schwartz, Tayoun, Vann, and Verna. Councilwoman Chernock was not present for the vote. Of the twelve voting members, Greenberg, Kelly, Murray and Vann had not been re-elected, and thus would not be recipients of the salary increase.

3. The Act of 1927 provides: "No city, borough, town, or township shall hereafter increase or diminish the salary, compensation, or

Accordingly, we reverse the order of the Commonwealth Court, *City Council Members v. Consumers Education and Protective Assn.*, 58 Pa.Cmwlth. 444, 428 A.2d 711 and reinstate the final decree of the Court of Common Pleas enjoining appellees from paying out or receiving the salary increases.[4]

The Salary Bill became effective at the beginning of Council's new term of office on January 7, 1980, and, *inter alia*, provided a salary increase of $10,000 per year for all Council members.[5] On January 9, 1980, appellants filed a complaint in equity in the Philadelphia Court of Common Pleas seeking preliminary and permanent injunctions against the salary increases on the grounds (1) that the Salary Bill violated the common law and public policy of the Commonwealth because eight of the voting Council members had a direct, personal, and pecuniary interest in its passage; (2) that the Salary Bill was in violation of the Act

emoluments of any elected officer *after his election*," (emphasis supplied), Act of May 13, 1927, P.L. 992, No. 497, § 1; 53 P.S. § 13403 ("Act of 1927").

4. Appellees are: Council members Schwartz (now resigned), Tayoun, Verna, Blackwell, Street, Krajewski, Jannotti, Coleman, Johanson, O'Neill, Pearlman, Rafferty, Clark, Anderson, Cohen and Specter; Mayor Green; Sheriff Sullivan; Clerk of the Court of Quarter Sessions Campbell; Register of Wills Donatucci; City Commissioners Maier, Tartaglione and Kane; District Attorney Rendell; City Controller Leonard; Acting Treasurer Gervin and Director of Finance DeSeve.

5. The amount of the various increases for elected officials and their salaries thereafter are:

| | | |
|---|---|---|
| President, City Council | $10,000 | [55,000] |
| Majority Leader, City Council | $11,000 | [38,000] |
| Majority Whip, City Council | $11,000 | [37,000] |
| Minority Leader, City Council | $11,000 | [37,000] |
| Council Members | $10,000 | [35,000] |
| Mayor | $10,000 | [65,000] |
| City Controller | $ 8,000 | [50,000] |
| Clerk of Quarter Sessions | $ 9,000 | [35,000] |
| Sheriff | $ 9,000 | [35,000] |
| Chairman, City Commissioners | $ 9,000 | [37,000] |
| City Commissioners | $ 9,000 | [35,000] |
| Register of Wills | $ 9,000 | [35,000] |
| District Attorney | $ 8,000 | [50,000] |

of 1927; and (3) that the Salary Bill was in violation of Article III, Section 27 of the Pennsylvania Constitution.[6]

In support of the Salary Bill, appellees asserted (1) that the public policy of this Commonwealth does not forbid salary determinations by public officials with personal pecuniary interest therein; (2) that the Act of 1927 has been superseded by various provisions of the Philadelphia Home Rule Charter ("Charter"), adopted in 1951 pursuant to the First Class Cities Home Rule Act of April 21, 1949, P.L. 665, 53 P.S. § 13101 et seq. ("Home Rule Act"); and (3) that a municipal pay raise ordinance is not a "law" within the meaning of Article III, Section 27 of the Pennsylvania Constitution.

Argument was limited to the legal issues raised on a stipulated factual record which, by agreement, *excluded all questions concerning the social or economic wisdom of the challenged pay raises.*[7] The lower court, basing its decision on common law conflict of interest principles and on the Act of 1927, entered a decree *nisi* invalidating the Salary Bill and enjoining appellees from paying out or receiving the salary increases.

Exceptions were heard by a three-judge panel of the common pleas court which, although divided with respect to grounds and reasoning, upheld the decree *nisi.* On appeal, the Commonwealth Court *en banc,* two judges dissenting, reversed as to members of Council and several city officials, and affirmed as to the remaining city officials.[8]

**6.** Article III, Section 27 provides: "No law shall extend the term of any public officer or increase or diminish his salary or emoluments, after his election or appointment."

**7.** It is not disputed that Council could have adopted valid salary increases during the previous four-year term to become effective at the beginning of the next term. The matter before us arose because Council waited to adopt the salary increases until just *after* the November, 1979 election.

**8.** The Commonwealth Court reversed as to the Mayor, City Controller, Clerk of the Court of Quarter Sessions, and all members of Council, and affirmed, for reasons unrelated to the questions raised in this appeal, as to the District Attorney, City Commissioners,

Appellants filed an emergency petition for allowance of appeal and motion for stay in this Court on April 27, 1981, both of which were granted, and expedited oral argument was heard on May, 18, 1981.[9] Appellants here challenge the Commonwealth Court's reversal on statutory and common law grounds and continue to press the constitutional challenge which was rejected both by the Commonwealth Court and by a majority of the common pleas panel.[10] Because our holding is supported by the clear and unambiguous prohibition of the Act of 1927, we do not reach the other legal issues raised in this appeal.

## I

Despite its express recognition that the "time phrases" in the Charter could be reconciled with the limitation of the Act of 1927 forbidding salary increases after election,[11] the Commonwealth Court concluded that the Act of 1927 is in "irreconcilable conflict" with the following Charter provisions:

"Each councilman shall receive a salary at the rate of . . . such . . . sum as the Council shall *from time to time* ordain. . . ." (Charter, § 2–100) (551 Pa. Code § 2.2–100) (emphasis supplied).

"*Until the Council shall otherwise ordain,* annual salaries shall be payable (to the Mayor, Controller, Director of Finance, Treasurer, and other officials) in equal semi-

Sheriff, and Register of Wills. The latter officials have separately filed a petition for allowance of appeal which is now pending.

**9.** We directed the City to continue placing the funds necessary to pay the disputed salary increases into an interest bearing escrow account until further order of this Court.

Jurisdiction is vested in this Court pursuant to the Judicial Code, Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S.A. § 724(a).

**10.** The panel's 2 to 1 decision in appellees' favor on the constitutional issue was affirmed by the Commonwealth Court.

**11.** "These time phrases can mean one of two things. . . . to forbid Council increases . . . *after* election . . . [or that the] Charter Commission . . . clearly rejected specific limitations on the Council's compensation powers." (Commonwealth Court Slip Op. pp. 23–24).

monthly installments as follows. . . ." (Charter, § 3–600) (351 Pa. Code § 3.3–600) (emphasis supplied).

Relying on the phrases "from time to time" and "until the Council shall otherwise ordain," the Commonwealth Court inferred that the Commission which had drafted the Charter ("Charter Commission") had rejected any and all limitations on Council's compensation powers, and thus had intended to supersede the Act of 1927 pursuant to the authority provided by Section 11 of the Home Rule Act, 53 P.S. § 13111.[12] The Commonwealth Court further concluded that because the Charter Commission had vested Council with broad compensation powers, salary ordinances promulgated thereunder could not violate the long established and salutary public policy of the Commonwealth.

## II

The fundamental public policy principle reflected by the prohibition codified in the Act of 1927 was articulated in the leading case of *Commonwealth v. Raudenbush*, 249 Pa. 86, 94 A. 555 (1913), where a member of a borough council voted to accept his own resignation in order to take a paying position as water commissioner. We observed:

12. Section 11 of the Home Rule Act provides in pertinent part: Any new charter or amendments to the charter of a city thus proposed, which are approved by a majority of the qualified electors voting thereon, shall become the organized law of the City at such time as may be fixed therein and all courts shall take judicial notice thereof. So far as the same are consistent with the grant of powers and the limitations, restrictions and regulations hereinafter prescribed, *they shall supersede any existing charter and all acts or parts of acts, local, special or general, affecting the organization, government and powers of such city, to the extent that they are inconsistent or in conflict therewith.* All existing acts or parts of acts and ordinances affecting the organization, government and powers of the city, *not inconsistent or in conflict with the organic law so adopted, shall remain in full force. . .* (emphasis supplied).

Section 18 of the Home Rule Act sets forth the Legislature's primary limitations on the supremacy of home rule powers, but none of these is applicable here, nor have appellants contended that the Act of 1927 could retain its vitality in Philadelphia on the basis of the legislative authority preserved in Section 18 if it were, in fact, in conflict with Charter provisions. (53 P.S. § 13133).

It is against public policy for a representative of a municipality to vote in its legislative body on any matter which affects him individually. . . . A councilman cannot vote on any contract or measure in which he is pecuniarily interested. This was the rule of the common law, and statutes have been enacted in most jurisdictions forbidding such voting. *A councilman cannot act for the municipality and at the same time act for himself individually. He cannot serve two masters at the same time.* He is a trustee for the municipality and he may not deal with himself in any matter which concerns it.

249 Pa. at 88–89, 94 A. at 555 (emphasis supplied). We thus held that the council member's vote was tainted by conflict of interest, and because his vote was determinative, we invalidated the entire measure.

In *Reckner v. School District of German Township*, 341 Pa. 375, 19 A.2d 402 (1941) we again observed that, ". . . it is well settled that no man should act officially in a matter involving discretion, where he is personally interested in the result." 341 Pa. at 376, 19 A.2d at 402. *Reckner* was a case where a school director cast the deciding vote on a proposal to increase his own salary. We invalidated the pay raise in an unanimous opinion, citing *Raudenbush, supra,* and noting ". . . the well founded and long-established public policy that one who has a direct personal interest in a matter under consideration by a representative public agency of which he is a member is disqualified from voting thereon, and if his vote is determinative, the action taken is void." 341 Pa. at 377, 19 A.2d at 403.

Shortly after *Reckner,* we decided *Commonwealth ex rel. McCreary v. Major*, 343 Pa. 355, 22 A.2d 686 (1941), a case in which members of the Beaver Falls city council appointed themselves to the Board of the Beaver Falls Municipal Authority. We sustained the lower court's ruling ousting Major from the Board, holding that ". . . well-established public policy prohibits respondent and his colleagues from using their official appointing power as councilmen of the City of Beaver Falls to appoint themselves members of the

Board of the Authority." Major had argued that the enabling acts of the Legislature creating the Authority, by implication or inference, had waived the applicability of traditional conflict of interest principles. In rejecting that argument, we said:

> While it cannot be questioned that the General Assembly has the inherent power to declare the public policy of the Commonwealth and may confer upon members of Council of municipalities power to appoint themselves to membership upon Boards of Authorities and to fix their own salaries, *such grant of power must be strictly construed, and unless the intention is clear, the power will be denied, because of its exceptional and extraordinary character.* We said, in this connection, in the recent case of *Reckner v. German Tp. School District,* supra, [341 Pa. at page 378, 19 A.2d at page 403, 133 A.L.R. 1254]: *"It necessitates an explicit direction on the part of the legislature to overthrow such a wholesome and salutary rule of the common law as that precluding a public servant from simultaneously representing both himself and his constituents.* As pointed out in *Goodyear v. Brown,* 155 Pa. 514, 518 [26 A. 665, 666, 20 L.R.A. 838, 35 Am.St.Rep. 903]: ' * * * it does not follow that everything may be done by a public officer that is not forbidden in advance by some act of assembly.' "

343 Pa. at 361–62, 22 A.2d at 689 (emphasis supplied).

Thereafter, in *Genkinger v. City of New Castle,* 368 Pa. 547, 84 A.2d 303 (1951), we considered a taxpayer's suit which sought to void an ordinance setting up a pension plan for the benefit of city employees, including the council members who voted on the bill. Although the Legislature had specifically authorized councilmen of third class cities to vote on pensions which directly affected themselves, we noted the ". . . *well and wisely established principle of public policy in Pennsylvania that a public official may not use his official power to further his own interests. . . ."* 368 Pa. at 551, 84 A.2d at 305 (emphasis in original), and, citing *Commonwealth ex rel. McCreary v. Major, supra,* concluded that:

Since this was a radical departure from the salutary public policy of this Commonwealth, the enabling legislative Act would have to be *strictly complied with*, and where public officials with a possible dual interest are concerned, *strictly construed.*

368 Pa. at 552, 84 A.2d at 306 (emphasis supplied). We decided that the ordinance in question exceeded the authority of the legislative enabling act and thus was in violation of public policy.

■ In the present case, the Commonwealth Court inferred that the general permissive language of the Home Rule Charter empowering Council to fix salaries "from time to time" or "[u]ntil the Council shall otherwise ordain" reflected an intent on the part of the Charter Commission to supersede the Act of 1927, a statute which specifically had codified a well founded and long standing principle of public policy deeply embedded in the common law and which had applied to the City of Philadelphia without interruption for nearly a quarter century.[13] Our decision in *Major, supra,* however, makes it clear that even when the Legislature itself seeks to depart from salutary public policy principles, it must express its intention to do so *explicitly,* and any power so granted will be *strictly construed.* Here, as in *Genkinger, supra,* "public officials with a possible dual inter-

---

**13.** A few years after an amendment to the Pennsylvania Constitution first made home rule a possibility (Art. XV, § 1, now Act IX, § 2), the Legislature, in recognition of the fact that home rule municipalities would set officers' salaries by ordinance, adopted the Act of 1927 for the very purpose of preventing conflict of interest with respect to salary determinations in home rule jurisdictions. Although the Act of 1927 was later repealed as to all governmental units *except* cities of the first class (i. e. Philadelphia), its prohibition was reenacted by the Legislature as to the mayor in second class cities (53 P.S. § 22183), all officials in third class cities (53 P.S. § 35903), and all officials in first class townships (53 P.S. § 55603). In the *only* instance where the Legislature has affirmatively authorized a class of municipality to confer in-term salary increases upon those voting on the measure, it has expressed its intention to do so with explicit specificity:

The councilmen may receive compensation to be fixed by ordinance *at any time and from time to time* as follows. . . . Borough Code, 53 P.S. § 46001 (emphasis supplied).

est are concerned." Accordingly, although there is no doubt that the Charter Commission had the power to supersede the Act of 1927 *if it explicitly chose to do so*, we must adhere to a standard of *strict construction*, and in the absence of an explicit direction on the part of the Commission to abrogate the long standing and wholesome policy of this Commonwealth to preclude an elected official from simultaneously representing both himself and his constituents, we must, if possible, adopt the interpretation of the Charter consistent with the continued vitality of such a venerable and salutary public policy.

### III

This is not a case where it is necessary to strain principles of statutory construction in order to reconcile the Act of 1927 with the Charter provisions. On the contrary, not only is it *reasonable* to interpret the provision consistently with the statute, but, in our view, reconciliation is *compelled* by the stipulated facts and overwhelming weight of judicial authority.

In an exercise of pure speculation, the Commonwealth Court noted that earlier drafts of Charter Section 2–100 included language precluding in-term pay raises for various officials while the final version deleted the restrictive language, and then concluded that ". . . the transition from draft two to the final version, demonstrates a clear intent on the part of the framers to authorize Council to increase the salaries of elected officers at its discretion, without regard to time." 58 Pa.Cmwlth. at 444, 428 A.2d 711.[14] We disagree. Whatever the unexpressed reason may have been for deleting the effective date for any salary change—and we

14. The earlier draft upon which the Commonwealth Court focused read:

> Each councilman, except the President of Council, shall receive a salary at the rate of $7,500 per annum, or such other sum as the Council shall *from time to time* ordain, and the President of Council shall receive in addition one thousand dollars per annum, but *no change in a councilman's rate of compensation shall be effective during the term for which he shall have been elected.* (Emphasis supplied).

could speculate about many, but will not—the Charter Commission expressed no clear intent to supersede the statute. Indeed, if anything, the earlier draft, which included the phrase "from time to time" in the same sentence with a prohibition against in-term raises, conclusively proves that the Charter Commission did not perceive the general language of the Charter provisions to be necessarily inconsistent with a specific limitation on the effective date of any salary increase as mandated by the Act of 1927.[15]

Moreover, the Charter was drafted long after a decision of this Court resolving an issue remarkably similar to that now before us. In *Cummings v. City of Scranton*, 348 Pa. 538, 36 A.2d 473 (1944), we were called upon to construe the phrase "from time to time" in former 53 P.S. § 9495 (now 53 P.S. § 22225), which provided that councils of cities of the second class had the "power to fix, from time to time, the salaries of all city officials and employees who are not elected." At issue was an attempt by the Scranton Council to raise the salaries of certain city employees separately from the annual appropriation ordinance, passed pursuant to former 53 P.S. § 9503 (now 53 P.S. § 22233), which required that all appropriations be made "annually, by general ordinance." In response to a taxpayers' suit, an injunction was issued. The city appealed, advancing the same argument presented by appellees here: that the words "from time to time" expressly authorized action *at any time*, without limitation.

---

**15.** In reenacting the prohibition of the Act of 1927 with respect to townships, the Legislature similarly uses the phrase "from time to time" while specifically restricting the effective date of salary changes:

"Elected officers of townships shall receive such salary, compensation or emoluments of office as may *from time to time* be fixed by ordinance of the township .... Any change in salary, compensation, or emoluments of office *shall become effective* at the beginning of the next term of the elected officer." 53 P.S. § 55603 (emphasis supplied).

The Legislature thus clearly manifested that it is not inconsistent with fixing salaries "from time to time" to mandate that the effective date of any such salary change adopted after the election of the officials whose pay would be affected must be no earlier than the beginning of the next term following the term for which they have been elected.

We rejected that view and, moreover, found no inconsistency between the general permissive language of § 9495 and the specific limitations of § 9503. In a unanimous opinion, we held:

... These two statutes must be read together. The legislature in enacting regulatory statutes intends a reasonable and just grant of power, not a power to be exercised arbitrarily, indiscriminately, and without regard to the interest of those for whom benefits were intended. Provision has been made by the legislature requiring publication of the intended annual appropriation ordinance to enable the public to express its approval or disapproval of contemplated disbursements.

Failure to construe 'from time to time' with reference to the legislative mandate that all appropriations shall be made annually would enable city council to manipulate salaries as they might desire.... The construction contended for by appellant ... would open the door to fraud and partisanship.... An intention to create such an undesirable situation will not be attributed to the legislature. We are of opinion that the legislature intended 'from time to time' to refer to the enactment of the annual appropriation ordinance. Council must, therefore, make provision in such ordinance for all increases in salaries which it might deem necessary and proper. *It does not have power to fix salaries from week to week, month to month, or at any other time during the fiscal year after the enactment of a general appropriation ordinance.*

City council is trustee of the funds over which it has control. The legislature has delimited the powers to be exercised by such trustee.... If the legislature intended the council of a city of the second class A to have the power it exercised, appropriate legislation could and would have been enacted....

348 Pa. at 543–44, 36 A.2d at 475–476 (emphasis supplied).

Thus, the Charter Commission had before it authority from this Court which expressly held that whatever "from

time to time" may mean, it certainly does *not* mean "at *any* time," the interpretation appellees would impose in order to preclude any and all time restrictions and thus establish a conflict with the Act of 1927.[16]

 Finally, we conclude that the principles enunciated in *Kelly v. Philadelphia*, 382 Pa. 459, 115 A.2d 238 (1955), are applicable here.[17] *Kelly* dealt with an alleged conflict between zoning provisions of the Home Rule Charter and procedural requirements of the Zoning Ordinance Enabling Act ("Zoning Act").[18] The lower court, citing the Zoning Act, had enjoined the city from effecting a zoning ordinance adopted pursuant to applicable Charter provisions. The city appealed, arguing that because the statute and the Charter provisions were inconsistent, the statute had been superseded. In a unanimous opinion, we upheld the chancellor's decree with the following conclusion:

> We are of the opinion that the alleged incompatability is more apparent than real and certainly could not be regarded as so utterly repugnant and irreconcilable as to render it impossible for both to consistently stand together. It will be observed that the provisions of the Charter ... are general in scope ...; whereas ... the Act [is specific] .... The Charter provisions can and should be interpreted as being confined to ordinances other than those covered by specific statutory provisions, the latter being considered added requisites for a particular subject.

**16.** More recently, the Legislature has demonstrated that when *it* intends to say "at any time," it knows how to do so. See Borough Code, 53 P.S. § 46001, *supra*, n. 13.

**17.** Our opinion in *Kelly* noted the widely recognized principle that repeals by implication are not favored and will not be permitted if there is any other reasonable construction, and that a law is not repealed by a later enactment if the two may be operative without repugnance to each other. That principle is ordinarily articulated only in reference to two acts of the same governmental body. But because the Legislature vested the Charter Commission with the right to effectively repeal legislative acts, we do not hesitate to apply a similar standard of construction to Charter provisions.

**18.** Act of May 6, 1929, P.L. 1551, 53 P.S. §§ 3822 et seq.

382 Pa. at 472–73, 115 A.2d at 244–45. Similarly, the compensation provisions here in question are general in nature, and can be read consistently with the specific limitations of the Act of 1927. The Act of 1927, like the Zoning Act in *Kelly*, is "an added requisite for a particular subject."

## IV

■ In essence, we hold that the Act of 1927 does not intrude upon Council's right to fix salaries "from time to time" or "[u]ntil the Council shall otherwise ordain." It simply declares that the earliest effective date of any such salary change adopted after the election of the officials whose pay would be affected must be the beginning of the next term following the term for which they have been elected. Hence, we find no inconsistency whatsoever between the general language of Sections 2–100 and 3–600 of the Charter and the specific limitations of the Act of 1927. Since the salary increase clearly was in violation of the prohibition of the Act of 1927, the Salary Bill is null and void.[19]

Accordingly, we reverse the order of the Commonwealth Court, reinstate the final decree of the Court of Common Pleas enjoining appellees from paying out or receiving the salary increases, and direct that all funds held in escrow pursuant to our Order dated April 29, 1981 be returned to the City treasury.

NIX, J., filed a dissenting opinion.

O'BRIEN, C.J., did not participate in the consideration or decision of this case.

NIX, Justice, dissenting.

There is no question the Act of 1927[1] can by superseded by the Charter Commission pursuant to the First Class Cities

19. We note that the Act of 1927 is applicable to *all* officers whose pay would be increased during the term for which they have been elected.

1. The Act of 1927 provides:

Home Rule Act of April 21, 1949, P.L. 665, 53 P.S. § 13101 *et seq.*, and the majority so concedes. Yet, surprisingly, the majority finds the Charter provisions involved here [2] not in contravention of the Act of 1927 by perceiving the phrases "from time to time" and "[u]ntil the Council shall otherwise ordain" as unclear and malleable. That approach facilitates the very type of labored reasoning the majority indicates to be unnecessary in this case. It is farce to suggest "[u]ntil the Council shall otherwise ordain" intended to continue the restraint of the Act of 1927. To apply the language of *Cummings v. City of Scranton, et al.*, 348 Pa. 538, 543–44, 36 A.2d 473, 475–76 (wherein we held that a city of the *second class A* did not have the power to enact the ordinance in question) to this case, is to completely ignore the power, previously conceded by the majority, existing in the City Council of Philadelphia pursuant to the First Class Cities Home Rule Act. A natural and normal reading of both phrases indicates the language used neither implies nor connotes the restrictions contained in the Act of 1927. Thus it is patent that the provisions of the Home Rule Charter *explicitly* frees the City Council of the constraint of the Act of 1927, in the exercise of its powers to fix salaries of Council members.

The majority does not address the constitutional challenge because of its finding that the Charter provisions are not inconsistent with the Act of 1927. However, we note that under *Baldwin v. City of Philadelphia*, 99 Pa. 164 (1881) and the cases following it, Article III, Section 13 (now Article III, Section 27) is inapplicable to municipal legislation.[3]

> No city, borough, town, or township shall hereafter increase or diminish the salary, compensation, or emoluments of any elected officer *after his election,* . . .
> Act of May 13, 1927, P.L. 992, No. 479, § 1; 53 P.S. § 13403.

**2.** Charter, § 2–100 (551 Pa. Code § 2.2–100); and Charter, § 3–600 (351 Pa. Code § 3.3–600).

**3.** While there may be wisdom in re-examining *Baldwin*, which bound both courts below through *stare decisis*, any change in its holding should be prospective only. The Council had a right to rely upon the law as articulated at the time of their action.

Public policy codified in the Act of 1927 is essentially common law public policy subsequently expressed statutorily. That public policy was lawfully rejected by the Charter Commission when it drafted the Home Rule Charter. It is my opinion that this Court should not revitalize such public policy once it was rejected by the Home Rule Charter and the citizens who adopted the Charter.[4]

Finally, the action of the Commonwealth Court in regard to the salary increases for the District Attorney, City Commissioners, Sheriff and Register of Wills based upon issues raised *sua sponte* by that court should be reversed.[5] Such a practice by lower courts has been disapproved of by this Court in *Wiegand v. Wiegand*, 461 Pa. 482, 337 A.2d 256 (1975). *See also Phillips Home Furnishing v. Continental Bank*, 467 Pa. 43, 354 A.2d 542 (1976); *In Re Duncan Trust*, 480 Pa. 608, 391 A.2d 1051 (1978); *Butler Area School District v. Butler Ed. Ass'n*, 481 Pa. 21, 391 A.2d 1295 (1978).

For the foregoing reasons I must dissent.

4. In any event, the salary increases for the newly elected councilpersons who did not vote for the pay raises are not tainted by any alleged conflict of interest and, therefore, must be sustained.

5. These six officials' Petition for Allowance of Appeal is presently pending in this Court. For some obscure reason, these cases have been deemed to be separate matters and hence not addressed by the majority.