## Cotlar, et al. *v.* Warminster Township.

Argued February 5, 1973, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*George M. Bush,* with him *Hartzel, Bush & O'Neill,* for appellants.

*Robert T. Burke,* with him *Stief & Burke,* for appellee.

OPINION BY JUDGE MENCER, April 3, 1973:

Warminster Township (Warminster) in Bucks County is a township of the second class with a population of approximately 35,000 persons and an area of approximately 10 miles. During the year 1969, the board of supervisors of Warminster consisted of five members. Following the filing of the auditor's report for Warminster for the fiscal year 1969, two taxpayers filed an appeal, alleging that four of the township supervisors were liable to a surcharge for certain compensation which they had received during the period of the audit. The Court of Common Pleas of Bucks County held a hearing and, by order dated July 26, 1971, surcharged each of the four supervisors the sum of $1100.-00. This appeal followed.

Although the supervisors employed a part-time township manager in 1969, they devised a plan for assigning certain areas of responsibility to individual supervisors. Each supervisor was to be a liaison between the Board and the personnel of the particular activity to which he had been assigned, as well as with the public. The township auditors had authorized the supervisors to receive $3.00 per hour compensation for each hour spent in road inspections and, since the supervisors were satisfied that they would spend at least 33 hours

each month in fulfillment of their new self-assigned duties, they set their additional compensation at $100.00 per month. No approval was obtained from the auditors, but the township solicitor informed the supervisors that it was his opinion that the $100.00 per month compensation, in addition to the compensation which they were entitled to receive for attending board meetings and for inspection of township roads, was legally permissible.

At the organization meeting of the board of supervisors on January 6, 1969, the following assignments were made: Albert W. Beyer, Director of Highways; Charles M. Hoffman, Director of Planning and Zoning; Joseph Lingo, Director of Municipal Affairs; Ronald Wallace, Director of Fiscal and Administrative Affairs; and Charles E. Cotlar, Director of Public Safety.

Thereafter, each of the supervisors, with the exception of Albert W. Beyer who refused the additional compensation, was paid from township funds the sum of $100.00 a month for eleven months during the year 1969.

The Second Class Township Code (Code), Act of May 1, 1933, P. L. 103, 53 P.S. §§65101, et seq., by Section 515, 53 P.S. §65515, as amended by the Act of May 3, 1965, P. L. 34, §1, provided that "[s]upervisors shall receive from the general township fund, as compensation, ten dollars for each meeting which they attend. The compensation of supervisors, when acting as superintendents, roadmasters or laborers, shall be fixed by the township auditors either per hour, per day, per week, semi-monthly or monthly, which compensation shall not exceed compensation paid in the locality for similar services. . . ."

Section 410 of the Code, as amended, 53 P.S. §65410, provides, *inter alia*, that "[e]xcept as provided in Sec-

tion 514,[1] no supervisor shall at the same time hold any other elective or appointive township office or position other than township roadmaster or secretary-treasurer." (Footnote omitted and added.)

Since the disbursements in question here were made not for attendance at meetings or for acting as superintendents, roadmasters or laborers, they were without legal authorization and illegal. The supervisors are elected public officials and the permissible range of their compensation was set by the legislature prior to the time that they were elected. The language of Sections 410 and 515 set forth above seems clear to us. The supervisors had no statutory power to establish a $100.00 a month compensation rate for their assigned duties designed to augment the responsibilities of the township manager. They personally profited to the extent of $1100.00 by their own unlawful action. Although it is unquestioned, and we accept it as a fact, that the surcharged supervisors acted in good faith, nevertheless they should not be permitted to keep the additional compensation. We simply hold that the excess received by the four supervisors over the amount of compensation allowed supervisors under the Code should be returned to the township treasury, and therefore the lower court's order of surcharge must be affirmed. *See Franklin Township Auditor's Report,* 202 Pa. Superior Ct. 415, 200 A. 2d 905 (1963).

Notwithstanding that the disbursements were made illegally, it is contended that, in the absence of evidence that Warminster suffered a financial loss as a result of the arrangement devised by the supervisors, the surcharge was improperly imposed because Section 545 of

---

[1] The exception as provided in Section 514 (53 P.S. §65514) is limited to township supervisors being employed as superintendents or roadmasters, or as laborers, if physically able to work on and maintain the roads.

the Code, as amended, 53 P.S. §65545, provides, *inter alia,* that "[a]ny elected or appointed officer, whose act, error or omission has contributed to the financial loss of any township, shall be surcharged by the auditors with the amount of such loss, and the surcharge of any such officer shall take into consideration as its basis, the results of such act, error or omission and the results had the procedure been strictly according to law."

Here, if the procedure had been strictly according to law, no additional compensation would have been paid to the supervisors for the duties which they specially assigned to themselves and which actually were their responsibilities as supervisors. (*See* 53 P.S. §65516.) Therefore, the surcharge of each supervisor in the amount of $1100.00 is in accord with Section 545, even admitting that a full-time township manager's salary would have been equal to or in excess of the amount paid to the part-time township manager and the additional compensation paid to the supervisors for undertaking a portion of the duties of a township manager. The financial loss to Warminster is that $4400.00 of its funds were disbursed but not "according to law."

Section 599.1 of the Code, 53 P.S. §65599.1, provides, *inter alia,* that "[t]he office of township manager shall not be deemed incompatible with . . . any other township office or employment, except that of supervisor." Once the supervisors employed a township manager, they could not appoint themselves to assist him or to perform his functions in his absence, since the positions of township manager and supervisor have been declared incompatible by the legislature.

One further argument weighs heavily against the supervisors' contention that it would be unfair to surcharge them since the township has benefited from their efforts. That argument is the well and wisely

established principle of public policy. A public official may not use his official power to further his own interest. *Genkinger v. New Castle,* 368 Pa. 547, 84 A. 2d 303 (1951). It is against public policy, in the absence of specific legislative authorization, for a public official to appoint himself to another public office. *Commonwealth ex rel. McCreary v. Major,* 343 Pa. 355, 22 A. 2d 686 ( 1941). Further, if we accepted the supervisors' argument and set aside the surcharge, we would be approving a method of circumventing and nullifying the compensation limitations imposed by Section 515 of the Code, 53 P.S. §65515. *See Lower Nazareth Township Supervisors' Appeal,* 341 Pa. 171, 19 A. 2d 92 (1941). There is no inherent right in a township officer to receive payment for his services, since he is entitled only to such compensation as is expressly authorized by statute. The fact that public officials made illegal payments in good faith and without fraudulent intent does not relieve them of liability to surcharge. *Likovich Appeal,* 347 Pa. 40, 31 A. 2d 543 (1943).

We find our sympathy with the supervisors who, in complete good faith and with advice of counsel, endeavored with the best of motives to do the work needed to be done in the township under an arrangement that would be no more, and likely less, costly to the taxpayers, and yet they acted outside the provisions of the law in so doing. The legal disposition of this case may not be as important as the possible consequences of the decision. We do not make today's ruling to frustrate or penalize good men in public positions but do so in recognition that we are all best served by the continual awareness that we are subject to a government of laws and not of men.

We must conclude that an elected official derives equally his authority and his compensation from the law and, when both are defined in the law, he can no

more enlarge the one than the other. *County of Mc-Kean v. W. A. Young, Commissioner of the County of McKean*, 11 Pa. Superior Ct. 481 (1899).

Order affirmed.