Edward G. McCutcheon, Jr., Petitioner *v.* Commonwealth of Pennsylvania, State Ethics Commission, Respondent.

Elroy J. Hoak, Petitioner *v.* Commonwealth of Pennsylvania, State Ethics Commission, Respondent.

Argued May 10, 1983, before President Judge CRUMLISH, JR. and Judges WILLIAMS, JR., CRAIG, MAC-PHAIL and DOYLE.

530

[redacted]

*Thomas J. Godlewski, Godlewski & Rathgeb,* for petitioners.

*Sandra S. Christianson,* General Counsel, for respondent.

*Thomas L. Wenger,* with him *Thomas W. Bergen, Wix, Wenger & Weidner,* for Amici Curiae, Pennsylvania State Association of Township Supervisors, Robert Daws, Robert Hill and Bruce Henry, Trustees.

*Edward L. Springer,* with him *Samuel R. Grego, Springer & Perry,* for Amicus Curiae, Columbia Life Insurance Company.

OPINION BY JUDGE CRAIG, October 14, 1983:

Elroy J. Hoak and Edward G. McCutcheon, Jr., former elected supervisors of Allegheny Township, a second class township, appeal an order of the State Ethics Commission. We must decide if the commission was correct in concluding that they used their public office to obtain financial gain in violation of section 3(a) of the Ethics Act.[1]

Specifically, the commission found that Hoak, who had served as supervisor since 1964, and McCutcheon,

---

[1] Section 3 of the Act of October 4, 1978, P.L. 883, 65 P.S. §403 (a), which provides:

No public official or public employee shall use his public office or any confidential information received through his holding public office to obtain financial gain other than compensation provided by law for himself, a member of his immediate family, or a business with which he is associated.

who had served since 1962, voted to purchase life annuity policies for a pension fund for each supervisor out of township funds, and, upon resigning from their positions as supervisors in 1981, surrendered those policies and received more than $11,000 each.[2] The commission decided that it would refer the matter to the appropriate district attorney for prosecution unless Hoak and McCutcheon promptly returned the sums received, plus 10% interest, to the township.

Hoak and McCutcheon do not dispute that on May 19, 1973, at a public meeting of the supervisors, they and another supervisor approved a motion that the township purchase policies worth $600 for participation in a pension fund for each supervisor, and that, at a public meeting on June 11, 1974, they approved a motion increasing the annuities by $1,000 annually for each supervisor.

Two facts are important. First, the supervisors purchased the policies only for themselves, not as part of a pension program including other township employees. Although the supervisors could have joined the Municipal Employees Retirement System embracing other township employees, these supervisors did not do so. Second, the township auditors reviewed the township expenditures for the years in question and did not surcharge the supervisors with respect to them. However, the township auditors took no affirmative action with respect to these policies for the supervisors, in terms of approving them as compensation or otherwise.

Hoak and McCutcheon contend that their actions were legal under the Second Class Township Code,[3] which recognizes that supervisors may also serve as employees, and thereby receive benefits allowable to

---

[2] Hoak received $11,105.03 and McCutcheon received $11,015.55.

[3] Act of May 1, 1933, P.L. 101, *as amended*, 53 P.S. §§65101-67605.

other employees. In all years in which Hoak and Mc-Cutcheon served as supervisors, the board of supervisors appointed Hoak as the superintendent of roads, and appointed McCutcheon as a roadmaster under section 514 of the Second Class Township Code,[4] which provides in relevant part:

> The supervisors shall fix the wages to be paid, either per hour, per day, per week, semi-monthly, or monthly, to the superintendent or roadmasters and laborers for work on the roads and bridges, which wages shall not exceed wages paid in the locality for similar services.
>
> *This section shall not prohibit the township supervisors from being employed as superintendents or roadmasters,* or as laborers, if physically able to work on and maintain the roads. In such cases, they shall not employ a superintendent or roadmasters and their compensation shall be fixed as hereinafter provided. . . . (Emphasis supplied.)

Confirming the dual role one may have as a supervisor and an employee, our Superior Court, in *Savage v. Mt. Pleasant Township Supervisors,* 119 Pa. Superior Ct. 392, 181 A. 519 (1935), said that a township supervisor who had been appointed by the board of supervisors as a roadmaster of a road district is not an employee of the township within the compensation act while acting as supervisor, but is an employee of the township while acting as the roadmaster. *Cf. Township of Ross v. McDonald,* 60 Pa. Commonwealth Ct. 290, 294, 431 A.2d 388, 390 (1981) ("Many governmental officers, who clearly have officer status—such as mayors or state cabinet members or judges—also have the status of employee with respect to compensation").

---

[4] 53 P.S. §65514.

Section 515 of the Code[5] describes the compensation of supervisors, and provides:

> Supervisors may receive from the general township fund, as compensation, twenty-five dollars for each meeting which they attend. *The compensation of supervisors, when acting as superintendents, roadmasters or laborers, shall be fixed by the township auditors either per hour, per day, per week, semi-monthly or monthly which compensation shall not exceed compensation paid in the locality for similar services* ... but no supervisor shall receive compensation as a superintendent or roadmaster for any day he receives compensation for attending a meeting of supervisors, unless such meeting is held after regular working hours. (Emphasis supplied.)

Although section 515 requires that compensation be provided "per hour, per day ... or monthly," one court has observed that this language indicates the legislature's intention to insure that the position of superintendent or roadmaster would be compensated only for work actually performed and not for the mere intangible aspect of the duties. *Appeal of D. Lee Sharpnack*, 9 Fayette L.J. 214 (1948). The term "compensation," however, conceivably encompasses more than mere wages, and, as we noted in *Township of Ross v. McDonald*, 60 Pa. Commonwealth Ct. 306, 431 A.2d 385, 387 (1981), "[o]ur Supreme Court has characterized retirement benefits as deferred compensation and, in effect, part of the salary of elected officials," citing *Retirement Board of Allegheny County v. McGovern*, 316 Pa. 161, 174 A. 400 (1934).

The authority for the supervisors to provide township funds to purchase employee insurance or pension

---

[5] 53 P.S. §65515.

premiums is found in section 702, cl. 13 of the Code,[6] which provides, in relevant part:

> [Supervisors have the power] to make contracts with any insurance company, so authorized, insuring any public liability of the township, including insurance on every township officer, official, and employe for liability arising from errors and omissions in the performance of their duties in the course of their employment, except that liability of elected or appointed officials or officers for surcharge in accordance with law shall not be affected hereby; *to make contracts for insurance with any insurance company, or nonprofit hospitalization corporation, or nonprofit medical service corporation, authorized to transact business within the Commonwealth, insuring its employes, and/or their dependents, or any class or classes thereof, under a policy or policies of group insurance covering life, health, hospitalization, medical service, or accident insurance, and may contract with any such company, granting annuities or pensions for the pensioning of such employees, for such purposes, may agree to pay part or all of the premiums or charges for carrying such contracts, and may appropriate out of its treasury any money necessary to pay such premiums or charges, or portions thereof.* . . . (Emphasis supplied.)

Unlike section 515, which provides that compensation of supervisors shall be fixed by the township auditors, no such requirement is expressly set forth in section 702, cl. 13. The commission interpreted the absence of provision for auditor control in that section as indicating a legislative intention to exclude super-

---

[6] 53 P.S. §65713.

visors, notwithstanding their potential dual status as supervisors and employees, from the general category of township employees, citing principles expressed in *Genkinger v. New Castle,* 368 Pa. 547, 551-552, 84 A.2d 303, 305-06 (1951), concerning conflict of interest.[7] *See also Consumers Education and Protective Association v. Schwartz,* 495 Pa. 10, 432 A.2d 173, 177 (1981).

However, in *Genkinger,* the court recognized that the legislature may establish a procedure whereby a public official may establish his own compensation, which, as in *Genkinger,* involved a pension. Nevertheless, the court said that such legislation "would have to be strictly complied with, and where public officials with a possible dual interest are concerned, strictly

---

[7] To further support its position, the commission relied on *Hendricks v. East Rockhill Township,* 1 D. & C.3d 763 (Bucks County 1977), where the court enjoined a township from paying premiums for the purchase or maintenance of a pension plan for the elected supervisors of a second class township, who had appointed themselves as roadmasters, considering that, because sections 514 and 515 provided that compensation to supervisors must be fixed by a board of auditors, the supervisors were without power to adopt and purchase a pension and annuity plan for their own benefit because no provision exists in section 702, cl. 13, granting authority to fix the supervisors' compensation.

Furthermore, because section 702, cl. 13 specifically provides that the township may secure public liability insurance "on every township officer, official and employee for liability arising from errors and omissions in the performance of their duties in the course of their employment," whereas the township can provide insurance only for its employees, the court concluded that the legislature drew a distinction between township officials and employees.

However, here we are considering Hoak and McCutcheon in their capacity as employees, recognizing that not all officials serve as employees. Furthermore, we cannot say that the portion of section 702, cl. 13, authorizing the purchase of public liability insurance for township officers and officials, as well as employees, added by amendment in 1975, should control the interpretation of "employees" in respect to that portion regarding pensions and annuities, which was contained in the earlier version of the Act.

construed [citation omitted]." *Id.* at 552, 84 A.2d at 306.

We consider that strict standard as we note that the legislature has established a procedure whereby supervisors can serve as township employees, and also has expressly stated that the township, by its supervisors, can provide annuities for pension plans for its employees. Thus, the supervisors' action was permissible. *Accord, Auditors of South Union Township Appeal,* 47 Pa. Commonwealth Ct. 1, 407 A.2d 906 (1979) (we dismissed surcharges against supervisors of a second class township and approved payments of hospitalization insurance premiums for township employees, some of whom were supervisors, under section 702, cl. 13).[8] Therefore, we must conclude that, under the Second Class Code, the supervisors had the authority to purchase the annuities, and this case thus differs from *Township of Ross v. McDonald* and *Cotlar v. Warminster Township,* 8 Pa. Commonwealth Ct. 163, 302 A.2d 859 (1973), upon which the commission relied.[9]

---

[8] In *South Union Township Board of Auditors v. South Union Township Board of Supervisors,* 75 D. & C.2d 324 (Fayette 1976), auditors challenged township payments made directly to a supervisor/roadmaster for the purpose of providing him a pension plan. The court acknowledged the validity of pension benefits for supervisors/roadmasters but affirmed the surcharge because of the improper method of payment; *i.e.,* directly to the roadmaster, and said:

> Although this money may have been used and properly so, for the purchase of an annuity pension for the employe, the board has no authority to make a direct distribution to the employe to invest it in whatever manner that employe desires, without any restrictions or limitations.

75 D. & C.2d at 328.

[9] *McDonald* involved the issue of whether the board of supervisors of a first class township had the power to enact a pension for themselves. Unlike the Second Class Code, no provision exists in the First Class Code by which supervisors can be appointed as employees. Thus, section 1502 of the First Class Code, which pro-

However, in concluding that the Second Class Township Code grants supervisors the general power to appropriate township funds for employee pension plans, we must also consider the parellel requirement in section 515 that the township auditors shall fix the amount of supervisors' compensation where the supervisors serve as employees. Although the auditors reviewed the township accounts and failed to surcharge the supervisors for their pension contracts, we cannot say that the auditors affirmatively fixed the compensation amount as required by section 515.

In *South Union Township,* where our conclusion was that supervisor action authorizing payment of hospitalization insurance premiums was lawful, the holding involved two key elements: (1) the insurance program embraced the whole group of township employees and was not confined to the supervisors, and (2) the payments were made to the insurers, as here, but they were not the type of payments which produced in the insurance beneficiaries the right to receive cash sooner or later, as was true in this case. Here, with the program made applicable only to the supervisors themselves, and with the supervisors, upon their departure, able to receive a substantial payment in the nature of deferred compensation, we must view the result here as different in substance from that in *South Union Township.*

---

vides townships of the first class the power to make contracts to insure its employees, could not apply to supervisors who were officials of the township rather than employees.

In *Cotlar,* supervisors of a second class township created positions which differed from those permitted in section 514. This court concluded that compensation received by the supervisors for occupying these positions was improper, holding that, because "the disbursements in question here were made not for attendance at meetings or for acting as superintendents, roadmasters or laborers, they were without legal authorization and illegal." 8 Pa. Commonwealth Ct. at 166, 302 A.2d at 861.

The undoubted power of the supervisors under section 702 to enter into insurance contracts for the township "insuring its employees . . . or any class or classes thereof," is not sufficient to legitimatize supervisors' actions in purchasing these policies for themselves, in the absence of affirmative action by the township auditors under section 515. When the "class" consists solely of the supervisors, section 515 logically applies because it is clearly designed to insure that compensation, whether deferred or otherwise, made payable to that class—the supervisors themselves when acting as employees—shall be determined by officials independent of the supervisors.

The fact that these supervisors received favorable advice from their state township association and other sources, indicating that insurance programs of this sort were "legal," unfortunately cannot avail these petitioners. Although a separate pension program or deferred compensation program for supervisors can be legally accomplished, we must agree with the commission that the required mode of legal· approval was absent.

We will affirm the commission's conclusion that, contrary to section 3 of the Ethics Act, these petitioners obtained "financial gain other than compensation provided by law. . . ."

The petitioners have also complained about the sanction which the commission applied. The commission treated the matter as one in which the commission could appropriately make a recommendation for prosecution under Ethics Act Section 7(11), 65 P.S. §407 (11), unless the petitioners divested themselves of the financial gain by returning it, with interest, to the township. We perceive that the commission thereby intended, with a sensitivity for the difficulty of the problems involved here, to confer an effect primarily prospective upon its decision, and give these petition-

ers an opportunity to avoid the severe impact of Ethics Act Section 9(c), 65 P.S. §409(c), which provides that a person who obtains improper financial gain must pay into the State Treasury triple the amount of the financial gain received. We are not inclined to insist upon the more stringent sanction contrary to the commission's conclusion, being willing to permit the commission to rest upon its discretionary authority, as conferred in section 407(11), to

> [m]ake recommendations to law enforcement officials either for criminal prosecution or dismissal of charges arising out of violations of this act.

The decision is therefore affirmed.

ORDER

Now, October 14, 1983, the orders of the State Ethics Commission, Nos. 82-128-C and 82-129-C, issued June 18, 1982, are affirmed.

ORDER

Now, October 17, 1983, the order of this court in this case, filed October 14, 1983, is hereby amended to read, in its entirety, as follows:

The orders of the State Ethics Commission, at No. 80-46-C, issued June 18, 1982, are affirmed.