567 A.2d 645

**COMMONWEALTH of Pennsylvania and the Township of Union, Appellees,**

v.

**James FEE, Appellant.**

Supreme Court of Pennsylvania,
Western District.

Argued Sept. 25, 1989.

Decided Dec. 21, 1989.

Charles M. Means, Markel Schafer & Means, P.C., Pittsburgh, for appellant.

Thomas L. Wenger, David R. Getz, Wix, Wenger, Weidner, Fenstermacher & Gunnison, Harrisburg, for Pa. State Ass'n of Tp. Sup'rs.

Ernest D. Preate, Jr., Atty. Gen., Jerome T. Foerster, Deputy Atty. Gen., Harrisburg, for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal from an order of Commonwealth Court, 116 Pa.Cmwlth. 183, 540 A.2d 1385, enforcing an opinion letter of the State Ethics Commission which directed the appellant, James Fee, a township supervisor of Union Township, to repay to the township the sum of $3,156.34 in insurance premiums paid on his behalf in violation of the State Ethics Act. The issues presented are whether the enforcement proceeding under the original jurisdiction of the Commonwealth Court was proper, and whether the amnesty provisions of. Act 41 of 1988 bar collection of the improperly paid insurance premiums.

The controversy arose as follows. Mr. Fee was a long-time supervisor of Union Township who was directed, in January, 1982, to complete a form for hospitalization insurance coverage to be paid for by the township. After he did so, the township paid the premiums on the policy from January, 1982 through January, 1985, in the amount of $3,156.34. Acting on a complaint by an undisclosed informant, the State Ethics Commission investigated the payments. On May 2, 1986, in a letter styled "Order No. 476," the commission informed Mr. Fee that the payments violated the State Ethics Act and that he was obligated to repay $3,156.34 to the township. The commission expressed the opinion that there was no intentional violation of the law, so the commission merely sought repayment of the benefit received in good faith but would not seek criminal prosecution under § 409(a) of the State Ethics Act nor treble damages under § 409(c), 65 P.S. § 409(a) and (c). The letter informed Mr. Fee that he could request reconsideration or challenge factual findings of the commission. Mr. Fee requested reconsideration, and on November 25, 1986, the

commission wrote another letter, called "Order No. R–476," which essentially repeated its prior communication. Mr. Fee did not appeal the commission's order, nor did he repay the insurance premiums.

On August 17, 1987, the Deputy Attorney General commenced an enforcement proceeding in Commonwealth Court, seeking, inter alia, a money judgment against Mr. Fee in favor of Union Township. On September 29, 1987, a senior judge of Commonwealth Court held an informal discussion at which the Deputy Attorney General appeared and appellant, unrepresented by counsel, appeared with two relatives. No witnesses were sworn and no testimony was offered. The court granted Mr. Fee an extension of time to enable him to obtain counsel to file pleadings in opposition to the Commonwealth's complaint, which he did on November 13, 1987.

On December 1, 1987, Commonwealth Court entered judgment against Mr. Fee in the amount of $3,156.34 in favor of Union Township, and rejected the claim for treble damages. The judgment was entered before the pleadings were closed and despite the fact that no trial or evidentiary hearing had been held by the Ethics Commission or Commonwealth Court, and no factual record on such matters had been made in or certified to Commonwealth Court. Mr. Fee filed a timely application to open or vacate the judgment as well as an appeal to this Court.

While appellant's petition for allowance of appeal was pending in this Court, a panel of Commonwealth Court heard oral argument on appellant's application to open or vacate judgment. On the same day, March 21, 1988, the general assembly passed Act No. 41 of 1988, 53 P.S. § 65515, granting amnesty to second-class township supervisors who received insurance benefits between January 1, 1959 and March 31, 1985. The enactment of Act 41 was called to the attention of the Commonwealth Court panel in a post-submission communication. On May 13, 1988, the Commonwealth Court panel denied appellant's application to open or vacate judgment, and this Court subsequently granted allowance of this appeal.

Without addressing the procedure in Commonwealth Court, we must vacate the judgment, for it contravenes Act 41 of 1988. The Act provides:

> (2) Any life, health, hospitalization, medical service or accident insurance coverage contract entered into by a township between January 1, 1959, and March 31, 1985, that includes or provides coverage for non-employe supervisors shall not be void or unlawful solely because such inclusion of non-employe supervisors was subsequently found to be without lawful authority. *No penalty, assessment, surcharge, forfeiture or disciplinary action of any kind may occur as a result of participation by non-employe supervisors.* Insurance benefits payable to insureds or their beneficiaries arising out of or on account of deaths, injuries, accidents or illnesses occurring prior to the effective date of this amendatory act shall remain the property of the insureds or their beneficiaries.

> (3) *All payments made by a township on any* group life, health, *hospitalization,* medical service or accident *insurance coverage contracts on behalf of non-employe supervisors between January 1, 1959, and March 31, 1985, which would have been proper but for the absence of auditor approval, are hereby deemed ratified and approved.* Any benefits payable to any such non-employe supervisor or his beneficiaries on account of such payments made by a township during the aforementioned period shall continue.

53 P.S. § 65515(c)(2) and (3); (emphasis added).

Commonwealth Court, in a footnote, denied the applicability of this statute: "However, this law does not apply to the instant matter because the factual events of this case occurred before Act No. 41 became effective on March 30, 1988." *Commonwealth v. Fee, supra* at 184–85 n. 1, 540 A.2d at 1386 n. 1. The "factual events" referred to are ambiguous; it is unclear whether they are (1) the improper participation in group health insurance which initially gave rise to this case, (2) the proceedings and conclusions of the

State Ethics Commission, or (3) the initiation of this enforcement proceeding in the Commonwealth Court. Whatever "factual events" are referred to, we regard the impact of Act 41 as unavoidable in this case.

Despite a long-standing practice of providing insurance coverage for elected local officials, the State Ethics Commission and Commonwealth Court, in a series of decisions, ruled that such insurance could be provided only to employee supervisors, and then only with the approval of the townships' auditors. *See, e.g., McCutcheon v. State Ethics Commission,* 77 Pa.Cmwlth. 529, 466 A.2d 283 (1983). The general assembly remedied the effect of such rulings on supervisors who had accepted the benefits of group insurance policies in good faith by enacting Act 41 of 1988, providing amnesty to supervisors who received insurance coverage between January 1, 1959 and March 31, 1985.

Words in legislation are to be construed according to their common and approved usage. 1 Pa.C.S. § 1903(a). The Act states: "No penalty, assessment, surcharge, forfeiture or disciplinary action of any kind may occur as a result of participation by non-employe supervisors." 53 P.S. § 65515(c)(2). The language appears to be plain enough and not to require any convoluted efforts of interpretation. As to the retrospective application of the statute, it must apply retroactively or not at all. It was enacted in 1988 to cover the period 1959 to 1985, and the clear intent of the legislature is that it be applied retroactively; any other application would entail the absurd conclusion that the legislature intended a nullity.

The contested insurance coverage of Mr. Fee was for the period January, 1982 to January, 1985, within the statutory amnesty period. It is apparent, then, that a judgment against him for repayment of the insurance premiums is a clear violation of the statute, and we therefore reverse and vacate the judgment.

Order reversed and vacated.

LARSEN, J., joins this opinion and files a separate concurring opinion.

LARSEN, Justice, concurring.

I join the majority opinion authored by Mr. Justice Flaherty. I write separately, however, to resolve the critical issues which the majority fails to address, i.e., 1) whether the State Ethics Commission (Commission) had the authority to impose an enforceable money judgment against appellant, James Fee; and 2) whether the Commission's letter of November 25, 1986, was a valid adjudication, and, was thus immune from collateral attack during the subsequent enforcement proceedings. Because I believe that the Commission does not have such authority under the enabling statute, and because I believe that the letter did not constitute an adjudication, the Commission's action against appellant was void *ab initio* and of absolutely no legal effect.

Section 7 of the State Ethics Act (Act) provides in relevant part:

In addition to other duties prescribed by law, the commission shall:

.    .    .    .    .

(9)(iii) *Initiate an inquiry* where an opinion has not been requested but where there is a reasonable belief that a conflict may exist. Such inquiry shall be conducted in privacy with full respect to the confidentiality of all the parties involved in the alleged conflict. *If the commission finds that there is a conflict, the information shall be provided for criminal proceedings unless the alleged offender removes himself from the conflict with receiving financial gain.*

.    .    .    .    .

(10) Hold hearings, take testimony, issue subpoenas and compel the attendance of witnesses.

(11) *Make recommendations to law enforcement officials either for criminal prosecution or dismissal of charges arising out of violations of this act....*

Act of Oct. 4, P.L. 883, No. 170, § 7, effective Jan. 1, 1979, 65 P.S. § 407 (emphasis added).

It has long been the law of this Commonwealth that "the power and authority to be exercised by administrative com-

missions must be conferred by legislative language clear and unmistakable. A doubtful power does not exist. Such tribunals are extrajudicial. They should act within the strict and exact limits defined." *Pennsylvania Human Relations Commission v. St. Joe Minerals Corp.*, 476 Pa. 302, 310, 382 A.2d 731, 735–736 (1978) (quoting *Green v. Milk Control Comm'n*, 340 Pa. 1, 3, 16 A.2d 9 (1940)). Nowhere does the Act at issue herein provide that the Commission may impose financial liability upon a person for violating its provisions. The Commission merely investigates possible wrongdoing, conducts hearings, advises the target of its investigation that he or she may avoid criminal prosecution by disgorging any illegal financial gain, and forwards information regarding alleged criminal violations of the Act to law enforcement officials.[1]

Commonwealth Court, in reaching its erroneous conclusion that the Commission does have the authority to adjudicate the financial liability of persons subject to the strictures of the Act, cited its decisions in *Yocabet v. State Ethics Commission*, 109 Pa.Commw. 432, 531 A.2d 536 (1987) and *McCutcheon v. State Ethics Commission*, 77 Pa.Commw. 529, 466 A.2d 283 (1983). Subject matter jurisdiction, however, was not an issue in either case, and Commonwealth Court failed to recognize sua sponte that financial liability *cannot* be imposed by the Commission under the Act. *See also In re Act of October 7, 1976, P.L. 1101 (Kestler Appeal)*, 66 Pa.Commw. 1, 444 A.2d 761 (1982) (action for reimbursement of unauthorized receipts brought by *county treasurer* in Court of Common Pleas).

In addition, it is clear that "[n]o adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard." 2 Pa.C.S.A. § 504. There was no hearing before the Commission in this case, nor does it

1. The Commission cannot expand its statutory powers by regulation, and Commonwealth Court erred in finding that the regulations promulgated by the Commission at 51 Pa.Code § 2.33 conferred subject matter jurisdiction upon it.

appear anywhere in the record that appellant was given an opportunity to request a hearing. *See* Transcript of Proceedings before Wilson Bucher, SJ., at 12–15 (Sept. 29, 1987). Accordingly, the order issued by the Commission was void.

Appellee insists that the unappealed order of the Commission is res judicata and that therefore, appellant's collateral attack on that order in Commonwealth Court is foreclosed. The passage of time and/or waiver can never breathe life into a void order, act, or adjudication. Although it is clear that res judicata effect can be accorded final orders of Commonwealth agencies which have acted in an *adjudicatory* capacity, *Merchants' Warehouse Co. v. Gelder*, 349 Pa. 1, 36 A.2d 444 (1944), lack of jurisdiction has always afforded a basis for a collateral attack upon a judgment in this Commonwealth.[2] Hence, the fact that appellant did not appeal from the order of the Commission is no bar to his challenge to the Commission's jurisdiction during the enforcement proceedings in Commonwealth Court.

**2.** Clearly, the Commission did not adjudicate anything in this case, as no adversarial hearing was conducted, and its order was merely based upon the conclusions the Commission reached following the *investigation* of appellant. *See Guthrie v. Borough of Wilkinsburg*, 505 Pa. 249, 478 A.2d 1279 (1984) (notice and hearing are required if order is to qualify as an adjudication—letter from agency will qualify as adjudication if letter is final order and impacts upon person's personal or property rights, privileges, immunities, duties, liabilities, or obligations).