626 A.2d 1131

**WEST SHORE SCHOOL DISTRICT, Appellant,**

**v.**

**PENNSYLVANIA LABOR RELATIONS BOARD and Those Persons Purporting To Act on Behalf of Such An Entity and West Shore Education Association, Appellees,**

**Commonwealth of Pennsylvania, General Assembly, Intervenor.**

Supreme Court of Pennsylvania.

Argued Sept. 27, 1991.

Decided May 26, 1993.

collecting delay damages for the period after a reasonable settlement offer has been extended.

Thomas A. Beckley, John G. Milakovic and Charles O. Beckley, II, Harrisburg, for appellant.

Thomas W. Scott, Harrisburg, for West Shore Educ. Ass'n.

Janice L. Anderson, John G. Knorr, III, Deputy Attys. Gen., Calvin R. Koons, Sr. Deputy Atty. Gen., for Pennsylvania Labor Relations Bd.

C. Clark Hodgson, Jr., Jane Landes Foster, Philadelphia, for intervenor—PA General Assembly.

James J. Haggerty, Gen. Counsel, Gregory L. Dunlap and Amy L. Putnam, Deputy General Counsels, for intervenor— Governor Robert P. Casey.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

ZAPPALA, Justice.

In this appeal, we are asked to review the Order of the Commonwealth Court denying West Shore School District's (District) request for a preliminary injunction, 131 Pa.Cmwlth. 476, 570 A.2d 1354 (1990). The District sought to enjoin the Pennsylvania Labor Relations Board (PLRB) from issuing an adjudication or conducting a hearing on two unfair labor practices filed by the West Shore Education Association (Association) against the District. In an unreported Memorandum Opinion, Commonwealth Court held that certain sections of the Sunset Act, Act of December 22, 1981, P.L. 508, No. 142, 71 P.S. § 1795.1, were unconstitutional. The court then concluded that taking into consideration the invalidation of these provisions with provisions previously stricken by this Court effectively destroyed the intended purpose of the Act, rendering the entire Act invalid. Since the Sunset Act was invalid, the PLRB remained a viable agency. Therefore, the Court concluded that no authority existed to support the granting of the District's injunction.

The District initiated this litigation by filing a Petition for Review in the nature of an action in equity in Commonwealth Court against the PLRB and the Association seeking to enjoin the PLRB from holding a hearing or issuing an adjudication

on two unfair labor charges brought by the Association. In support of its request for injunctive relief, the District argued that the PLRB no longer existed since it had not been constitutionally reestablished under the Sunset Act. In contrast, the Association argued that if the Leadership Committee and resolution process under the Act is unconstitutional, then the entire Act is unconstitutional since that procedure is not severable. Once the Act is declared void, the PLRB would remain viable under its enabling legislation, the Pennsylvania Labor Relations Act, Act of June 1, 1937, P.L. 1168, No. 294, 43 P.S. § 211.1 et seq. Accordingly, the PLRB would have authority to adjudicate the Association's unfair labor charges against the District.

The PLRB was created by the legislature in the Pennsylvania Labor Relations Act (PLRA) under its police powers. Nothing in that Act limits the existence of that Board for any particular period of time. In fact, Section 14 of the PLRA, 43 P.S. § 211.13, provides that if any provision of the Act is adjudged to be invalid, the remainder of the Act survives.

In 1981, the legislature adopted the Sunset Act. The purpose of this Act was to evaluate and monitor the need and use of state agencies. Under Section 6 of the Sunset Act, an agency (not its enabling legislation) is terminated unless continued or reestablished under the Sunset Act. To implement this purpose, the Act utilized the Legislative Budget and Finance Committee, which was charged with "evaluating the management and performance of an agency", 71 P.S. § 1795.2, and created a Leadership Committee, 71 P.S. § 1795.3. The Leadership Committee was a joint committee of the General Assembly comprised of the Speaker of the House of Representatives, the President pro tempore of the Senate, and Majority and Minority leaders of the House of Representatives and the Senate. The Leadership Committee's primary function is to "direct and coordinate the implementation of the sunset review procedure" 71 P.S. § 1795.4(1), but did have the authority to postpone review or termination of an agency for a period not exceeding one year. 71 P.S. § 1795.4(4). However, section 7 of the Act, 71 P.S. § 1795.7, provides a procedure to

reestablish or continue an agency scheduled for termination under the Act. Under section 7, an agency scheduled for termination may be reestablished by the General Assembly by legislation, provided such legislation is adopted prior to November 1 of the year that the agency is scheduled to be terminated. On November 1, the presiding officers of each House must schedule for consideration a resolution determining whether an agency scheduled for termination on December 31 of that year should be continued until the next review and termination cycle scheduled for that agency. 71 P.S. § 1795.7(b). Finally, under section 6(a) of the Act, the PLRB was scheduled to be terminated on December 31, 1983.

On January 25, 1983, the Leadership Committee, as authorized by section 4 of the Sunset Act, 71 P.S. § 1795.4, extended the life of the PLRB for one year or until December 31, 1984. In November of 1984, pursuant to section 7 of the Sunset Act, both chambers of the General Assembly adopted Sunset Resolution 17 reestablishing the PLRB. On December 30, 1984, then Governor Thornburgh signed Senate Resolution 17 but was not given the identical House Resolution for signature.

Relying on this Court's decision in *Blackwell v. Commonwealth of Pennsylvania, State Ethics Commission*, 523 Pa. 347, 567 A.2d 630 (1989), (*Blackwell II* ) the District filed on January 17, 1990, its Petition for Review in Commonwealth Court seeking injunctive relief. After taking testimony, hearing oral argument, and reviewing legal briefs, Commonwealth Court denied the request for relief.

By our order of March 30, 1990, we granted reargument of *Blackwell II* limited to the question of the retroactive application of our original *Blackwell* decision. We also assumed plenary jurisdiction over several related cases, including the appeal *sub judice* and consolidated all of them for reargument. *Blackwell v. Commonwealth of Pennsylvania, State Ethics Commission*, 524 Pa. 403, 573 A.2d 536 (1990) (*Blackwell IV* ).

In *Blackwell V* [*Blackwell v. Commonwealth of Pennsylvania, State Ethics Commission*, 527 Pa. 172, 589 A.2d 1094

(1991) ], we held that our ruling in *Blackwell II* would apply to the consolidated appeals as well as all proceedings pending at the time of our *Blackwell II* decision (December 13, 1989) wherein the constitutional issue regarding section 4(4) of the Sunset Act was preserved. With respect to the present appeal, we refused to consider the constitutionality of section 7(b) of the Sunset Act since that issue was not before us.

On April 1, 1991, the District filed an application for special relief and/or reargument requesting this Court to hear oral argument on the issues raised by its appeal, notably, the constitutionality of section 7(b). By order dated July 31, 1991, we granted the District's application and scheduled oral arguments for our September 1991 session.

In *Blackwell II*, we held that section 4(4) of the Sunset Act, which allowed the Leadership Committee to postpone the termination of an agency for up to one year, was unconstitutional because it sought to transfer legislative authority to the legislative committee in violation of Article 2, Section 1 of our state Constitution. In contrast, in *Commonwealth v. Sessoms*, 516 Pa. 365, 532 A.2d 775 (1987), we permitted the legislative delegation of some aspect of its power to a "legislative agency" just as executive branch agencies exist to carry out functions committed to executive power. Thus, it was within the power of the General Assembly to create a sentencing commission for the purpose of recommending sentencing guidelines. Since its recommendations were merely advisory and not mandatory, its function did not infringe upon the powers of the judiciary to exercise its discretion in imposing sentences within statutory constraints. While both *Blackwell* and *Sessoms* are instructive with regard to the exercise of constitutional authority, neither one is controlling in this appeal, since here we are reviewing legislative action taken pursuant to Section 7(b) of the Sunset Act when the Governor has affixed his signature to that legislative enactment [1].

1. In *Blackwell II*, we declined to address challenges to other provisions of the Act including Section 7(b) because we could dispose of the appeal based upon our discussion of Section 4(4). Accordingly, it was unnecessary to invalidate the entire Act, as the resolution process under

Article 3, Section 9 of the Pennsylvania Constitution provides that:

> Every order, resolution or vote, to which the concurrence of both Houses may be necessary, except on the question of adjournment, shall be presented to the Governor and before it shall take effect be approved by him, or being disapproved, shall be repassed by two-thirds of both Houses according to the rules and limitations prescribed in case of a bill.

However, Article 3, Section 1 of our state Constitution provides that no law shall be adopted except by a bill. If the action required under Section 7(b) of the Sunset Act is deemed a law, then Article 3, Section 1 is applicable and the joint resolution of the General Assembly is invalid because it must act by the use of a "Bill". However, if Article 3, Section 9 is controlling then the bicameral action adopted by the Governor comports with constitutional requirements.

Our review has provided little, if any, assistance in distinguishing the differences the drafters of Article 3, Sections 1 and 9 intended in characterizing certain legislative actions as "bills" and "resolutions". The question becomes whether passage of Sunset Resolution 17 was or was not a law; for if it was a law, then the procedure by which it was enacted was flawed.

In *Commonwealth v. Griest*, 196 Pa. 396, 46 A. 505 (1900), we addressed Article 3 of our state Constitution:

> It is entitled "Of legislation" and only purports to be an authorization and limitation of the legislation of the commonwealth. It prescribes the manner in which the business of making laws must be conducted, and the subjects with reference to which it may, and may not, be exercised. Thus in its earlier sections it provides that no law shall be passed except by bill and that no bill shall be so altered by either house as to change its original purpose; that no bill be considered unless referred to a committee, returned there-

Section 7(b) arguably presented a procedure to reestablish an agency scheduled for termination.

from and printed; that no bill except appropriation bills shall be passed containing more than one subject which shall be clearly expressed in its title; that every bill shall be read in each house on three different days and prescribing the terms upon which alone it shall become a law; that all amendments to bills shall be concurred in by a majority of the members of each house and directing the manner in which this shall be done; that bills shall be revived, amended or extended in a particular manner. These provisions cover the first six sections.

We then discussed the relationship of resolutions under Article 3, Section 9 to the general law-making powers of the General Assembly under Article 3:

... it is perfectly manifest that the orders, resolutions and votes, which must be so submitted, are, and can only be, such as relate to and are a part of the business of legislation, as provided for and regulated by the terms of article 3. These are the affairs that are the exclusive subjects of the article. They constitute the matters which are fully and carefully committed to that department of the government which is clothed with its whole legislative power. The things that are to be done by the two houses are legislative only, and hence, when orders, resolutions and votes are directed to be submitted to the governor it is orders, resolutions and votes referring to matters of legislation only that are to be so submitted ...

■ Thus, a concurrent resolution signed by the Governor has the effect of law, although, the resolution in and of itself is not a law as contemplated under Article 3, Section 1. Resolutions do not attempt to promulgate rules or create rights but merely enhance those which already exist.

■ In this instance, for example, the PLRA sets forth the substantive law regarding the protection of employees' rights to organize and bargain collectively. The PLRB merely implements that right. Sunset Resolution 17 did not alter the PLRA but merely attempted to continue the existence of the Board created to carry out the substantive law. Sunset

Resolution 17 gave the Board no greater authority than it previously had nor did the resolution alter or amend the PLRA. Therefore, the resolution does not constitute a law mandating full compliance with Article 3, Sections 1 through 6 of our state Constitution.

Since both Houses adopted identical resolutions reestablishing the PLRB, which was subsequently approved by the Governor, the resolution had the effect of law and could have reconstituted the PLRB. However, the legislature's modified application of section 7(b) of the Sunset Act requires reliance upon the vitality of section 4(4) as a prerequisite to any such action. Specifically, if the PLRB was improperly extended under section 4(4) and not reestablished under section 7(b) prior to its termination, then the passage of a resolution extending the PLRB could not have reestablished the PLRB.

There is no question that in *Blackwell* we held that the procedures set forth in section 4(4) constituted an unconstitutional delegation of legislative authority. Therefore, any agency deriving its continued existence upon an extension granted under authority of section 4(4) is in error. Reestablishment under a modified version of section 7(b) must be premised upon a proper extension of an agency's life. If the agency is not properly extended, then under section 7(a), an agency must be created by legislation, not reestablished by resolution.

Since we have held section 4(4) unconstitutional and the PLRB's date of termination was extended from December 31, 1983, to December 31, 1984, under authority of that section, as of December 31, 1983, the PLRB was terminated, taking effect on July 1, 1984. Therefore, the legislative action of November 20, 1984, reestablishing the PLRB is of no consequence and the attempt to resurrect the PLRB was improper.

Although we have found no constitutional impediment in the procedure followed by the legislature in this instance in reestablishing the PLRB, the same cannot be said for the procedure set forth in section 7(b) of the Act. Under section

7(b) as drafted, the legislature need not seek the Governor's approval for any adopted resolution. Merely the passage of a resolution by both chambers would reestablish an agency set for termination. Based upon our discussion above, we hold that section 7(b) as drafted violates Article 3, Section 9 of our State Constitution.

Unlike the PLRA, the Sunset Act has no severability clause. Therefore, the Sunset Act contains no specific pronouncement regarding the vitality of the Act should any provisions be declared invalid. Thus, we must be guided by section 1925 of the Statutory Construction Act which provide as follows:

> The provisions of every statute shall be severable. If any provision of any statute or the application thereof to any person or circumstance is held invalid, the remainder of the statute, and the application of such provision to other persons or circumstances, shall not be affected thereby, unless the court finds that the valid provisions of the statute are so essentially and inseparably connected with, and so depend upon, the void provision or application, that it cannot be presumed the General Assembly would have enacted the remaining valid provisions without the void one; or unless the court finds that the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

■ As set forth above, the intended purpose of the Sunset Act was to evaluate and monitor the need and use of state agencies. To achieve this goal, the legislature created two different mechanisms, a leadership committee and a resolution process. Under *Blackwell II*, we held that Section 4(4) of the Sunset Act was unconstitutional. However, we concluded that it was unnecessary to address any other provisions of the Act since consideration of Section 4(4) disposed of the issue involved. See 523 Pa. 347, 362, n. 3, 567 A.2d 630, 637–638, n. 3. Without either of these procedures available to implement the recommendations of the Legislative Budget and Finance Committee, the intended purpose of the Act is thwarted. Therefore, we must agree with the Commonwealth Court that the legislature would not have enacted the remaining valid provi-

sions without the Leadership Committee or resolution process. Accordingly, we must invalidate the entire Sunset Act.

Since the Sunset Act is invalid, the limitation on the existence of the PLRB as set forth in the Sunset Act is void. Therefore, the Commonwealth Court acted properly in denying the District's request for injunctive relief.

The order of the Commonwealth Court is affirmed.

McDERMOTT, J., did not participate in the decision of this case.

LARSEN, J., concurs in the result.