634 A.2d 743

Robert REBOTTINI, Petitioner,

v.

STATE ETHICS COMMISSION, Respondent.

Terry PAINTER, Petitioner,

v.

STATE ETHICS COMMISSION, Respondent.

Donald RHODES, Petitioner,

v.

STATE ETHICS COMMISSION, Respondent.

Thomas MANCE, Petitioner,

v.

STATE ETHICS COMMISSION, Respondent.

Commonwealth Court of Pennsylvania.

Argued June 18, 1993.

Decided Nov. 23, 1993.

phone calls to co-workers about resident abuse charges were for improper purpose or an effort to comply with the law).

158

Richard E. Myers, for petitioners.

Vincent J. Dopko, Chief Counsel, for respondent.

Before CRAIG, President Judge, and FRIEDMAN, J., and SILVESTRI, Senior Judge.

FRIEDMAN, Judge.

Robert Rebottini, Donald Rhodes, Thomas Mance, and Terry Painter petition for review of four orders of the State Ethics Commission finding that each violated § 3(a) of the 1978 "State Ethics Act"[1] (Act) which prohibits the use of

1. Act of October 4, 1978, P.L. 883, *as amended*, 65 P.S. § 403(a). The State Ethics Act was amended in 1989, but the original 1978 version

public office to obtain financial gain other than compensation provided for by law. These four orders have been consolidated for our review. The facts involve actions Petitioners took as members of two separate municipal authority boards. Rebottini and Rhodes were board members of the North Huntingdon Township Municipal Authority (NHTMA). Painter was a member of the Western Westmoreland Municipal Authority (WWMA). Mance was on both boards. We reverse the Commission with regard to the NHTMA board members, Rebottini, Rhodes and Mance. With regard to the WWMA board members, Mance and Painter, we affirm in part and reverse in part.

Petitioners do not challenge the Commission's factual findings regarding the NHTMA board. From its inception in 1968, the NHTMA had seven board members and five officers. In 1979, however, the number of board members was reduced from seven to five. As a result, each board member could have an officer position. Rebottini served a five-year term on the NHTMA board from 1981 to December 31, 1986. During each of the years he was on the board, he also held an officer position. In all but one year, he participated in the board's annual reorganization meeting and voted for his own election. Rhodes was appointed to the NHTMA board in 1981 for a five-year term; during this term he also served as an officer. Mance served on the NHTMA board from 1976 to 1992. Each year between 1981 and 1988, the board elected him to an officer position and Mance himself participated in that board vote.

In addition to voting to help elect themselves to officer positions, Mance, Rhodes and Rebottini all participated in setting their own officer salaries. In 1981 the board passed a

applies in this case because the activities in each of these four cases occurred prior to the effective date of the 1989 amendments.
Section 3(a) provides:
(a) No public official or public employee shall use his public office or any confidential information received through his holding public office to obtain financial gain other than compensation provided by law for himself, a member of his immediate family, or a business with which he is associated.

resolution providing that officers would receive $200.00 per month. The board increased this salary to $250.00 in 1982 and to $300.00 in 1983. Officers continued to receive $300.00 per month until 1987.

After an investigation and hearings which together spanned a five-year period, the Commission concluded that Rebottini, Rhodes and Mance in their capacities as NHTMA board members violated § 3(a) of the 1978 Act. However, the Commission imposed no sanctions upon them for their conduct and took no further action in the matter.

We turn now to the facts as they pertain to the WWMA. The WWMA is a joint authority of six municipalities with a ten-member board. Painter served on the WWMA board from 1986 through 1990. Mance served on the WWMA board from 1984 through 1988. At a board meeting on May 21, 1986, Painter suggested that WWMA board members should be compensated for their "dedication and services provided." (R.R. at 150a.) The WWMA solicitor advised the board members that they would first have to obtain permission from all six municipalities and that such salaries could not become effective until the following term.[2] (Id.) In response, Mr. Painter stated that the "vehicle for simplicity" would be to create paid officer positions for each board member. (R.R. at 151a.)

On August 20, 1986, the WWMA board passed a motion to create six new officer positions. Both Mance and Painter voted in favor of this proposal. (R.R. at 52a.) The addition of these new officer positions allowed each board·member to become an officer and, in fact, each member of the board was

2. Section 7(B) of the Pennsylvania Municipality Authorities Act of 1945, Act of May 2, 1945, P.L. 382, as amended, 53 P.S. § 309(B), provides in pertinent part that members

shall receive such salaries as may be determined by the governing body or bodies of the municipality or municipalities, but none of such salaries shall be increased or diminished by such governing body or bodies during the term for which the member receiving the same shall have been appointed.

officially made an officer.[3] The WWMA board set the officer salaries at $150.00 per month. Painter was not present at this meeting, but Mance was present and voted on his own salary. (R.R. at 52a–53a.) Both Mance and Painter voted on their officer salaries in 1987 and 1988. During the years they served in these newly-created "officer" positions, Painter and Mance received $6,150.00 and $3,350.00 respectively in compensation.

After a hearing on this matter, the Commission made the following relevant findings with regard to Mance:

38. This compensation [received by Mance] was not based upon attendance at meetings or services rendered but was rather automatically paid to each Authority member regardless of attendance or service.

42. There was no change in the functions, duties and responsibilities of Authority members after the amendment to the by-laws through which the six additional committee positions were created.

Based on these findings, the Commission concluded:

Mance, Painter and the other WWMA members created officer positions for the WWMA and had the board members appointed to those so called officer positions; through that machination the WWMA board members could compensate themselves even though any work which was done was as a board member and not as an officer.

Mance decision at 51. Similarly, with regard to Painter, the Commission made the following findings:

28. There was no change in the functions, duties and responsibilities of Authority members after the amendment to the by-laws through which the six additional committee positions were created.

3. The WWMA originally employed five officers. Four of the five officers were also board members; one officer was a non-board member. After the six new officer positions were established on August 20, 1986, there was a total of eleven officer positions. Ten positions were filled by board members; the eleventh officer position continued to be filled by a non-board member.

34. Terry Painter devised a mechanism to circumvent the statutory requirement that the compensation of authority board members be set by the governing body.

c. . . .

4. The services performed by Painter were in his capacity as WWMA board member and not as an officer.

Accordingly, the Commission concluded:

it is clear that the board members were trying to fix their compensation as board members. In this context we must look at the substance over form . . . although the form of the transaction was the utilization of the officer positions, the substance was the WWMA board compensating its board members in derogation of the Municipality Authorities Act which requires that such action be done by the appointing authority.

Painter decision at 31.

Thus, the Commission determined that Mance and Painter violated § 3(a) of the Act and ordered them to pay restitution to the WWMA for all compensation they had received while serving on the WWMA board.

On appeal,[4] Petitioners argue that their actions did not violate § 3(a) of the Act and that the doctrine of laches bars the Commission's action against them.[5] Mance and Painter

4. Our scope of review on decisions of the State Ethics Commission is limited to determining whether necessary factual findings are supported by substantial evidence, an error of law has been committed or constitutional rights have been violated. *Yocabet v. Commonwealth, State Ethics Commission,* 109 Pa.Commonwealth Ct. 432, 531 A.2d 536 (1987).

5. Rebottini and Rhodes also argue that the five-year criminal statute of limitations for acts performed by public officials set forth in 42 Pa.C.S. § 5552(c)(2) bars the SEC's action against them. However, we need not address this argument because of our decision that the SEC's adjudication against Rebottini and Rhodes should be reversed on grounds that their actions did not violate the Ethics Act.

Petitioners' brief also contains an argument that the SEC's investigation was barred by the Sunset Act; however, at oral argument Petitioners noted that in light of *West Shore School District v. Pennsylvania* · *Labor Relations Board,* 534 Pa. 164, 626 A.2d 1131 (1993), which

further contend that the Commission's finding that they contrived to be paid as WWMA board members is unsupported by substantial evidence and that the 1978 Act does not authorize the Commission to require them to pay restitution.

 We decline to apply the doctrine of laches in this case. Laches applies when a party exhibits a lack of due diligence in instituting a claim and the adverse party has been harmed by the delay. *Williamstown Borough Authority v. Cooper,* 404 Pa. Superior Ct. 516, 591 A.2d 711 (1991), *allocatur granted,* 529 Pa. 651, 602 A.2d 861 (1992). We recognize that more than five years elapsed between the commencement of the Commission's investigation and the conclusion of the case. Certainly, it would have been preferable for the Commission to act more promptly. Petitioners undoubtedly suffered a great deal of anxiety over the course of the Commission's lengthy investigation. However, given the difficulty of conducting such investigations with limited resources and the importance of deterring unethical conduct and maintaining the public's faith and confidence in public officials, we do not find that the Commission proceeded with a lack of due diligence.

Nor do we find that the delay has been harmful to Petitioners' case. Petitioners claim they were prejudiced by the delay because (1) their memories of the events in question have diminished and (2) if the Commission had moved faster, Petitioners could have raised the Sunset Act as a jurisdictional defense to the proceedings.[6] However, nothing in the record indicates Petitioners were prejudiced by loss of memory, and under the recent decision of *West Shore School District v. Pennsylvania Labor Relations Board,* 534 Pa. 164, 626 A.2d 1131 (1993), the Sunset Act is not a valid jurisdictional defense.

The main thrust of Petitioners' argument is that they did not violate the Act because their actions were specifically

declared the Sunset Act unconstitutional, they did not intend to pursue this argument.

6. *Blackwell v. State Ethics Commission,* 527 Pa. 172, 589 A.2d 1094 (1991) (*Blackwell V*) required that a jurisdictional defense based on the Sunset Act must be raised before December 13, 1989.

authorized under § 7C of the Municipality Authorities Act of 1945, 53 P.S. § 309C.[7] Therefore, Petitioners argue, the compensation they received as officers was "compensation provided by law" under § 3(a) of the Act. The Commission, on the other hand, argues that even though the Municipality Authorities Act authorizes board members to become officers and set officer salaries in general, nothing in § 7C specifically authorizes them to vote on their own officer salaries. According to the Commission, if a board member is to receive a salary as an officer, such salary must be set by the governing body of the authority, pursuant to § 7B of the Municipality Authorities Act, 53 P.S. § 309B.[8]

We agree that the compensation Rebottini, Rhodes and Mance received as NHTMA board members was compensation provided by law. The phrase "as provided by law" is a reference to the laws in force at the particular time when the statute containing the phrase is applied. 1 Pa.C.S. § 1991. Section 7C of the Municipal Authorities Act of 1945, *as amended*, 53 P.S. § 309C, was in effect when the legislature enacted the 1978 Ethics Act. Section 7C is an affirmative grant of authority expressly giving board members the power to create officer positions, appoint board members to officer positions and set officer salaries. This section contains no exceptions prohibiting board members from voting on their *own* appointment to officer positions and their *own* salaries. Had the legislature intended to prohibit this, it easily could have included such a provision in the statute. It did not. In the absence of a clear prohibition, the law should be construed in Petitioners' favor. Furthermore, to do otherwise would

7. Act of May 2, 1945, P.L. 382, *as amended*, 53 P.S. § 309C. This section provides in pertinent part:
 The board shall fix and determine the number of officers, agents and employees of the Authority and their respective powers, duties and compensation and may appoint to such office or offices any member of the board with such powers, duties and compensation as the board may deem proper.

8. This section provides that board members "shall receive such salaries as may be determined by the governing body or bodies of the municipality or municipalities...."

discourage persons from serving as public officials. We there-fore conclude that municipal authority board members do not automatically violate § 3(a) of the Act merely by participating in a board vote to elect themselves to paid officer positions or to set their salaries. Under the Municipality Authorities Act, their officer salary is compensation "as provided by law."

██ Our conclusion with regard to Painter and Mance as a WWMA board member is different. The facts as found by the Commission show that the WWMA board members did more than just vote on their officer election and salaries. They created officer positions specifically to circumvent the § 7B requirement that board member salaries be set by the authori-ty's governing bodies. This is an abuse of public office and is precisely the type of conduct which the Act was intended to prevent.

 We do not accept Mance and Painter's argument that the Commission's finding that they contrived to be paid as board members is unsupported by substantial evidence. Substantial evidence is such evidence that a reasonable person would consider adequate to support the finding. *Yocabet v. State Ethics Commission*, 109 Pa.Commonwealth Ct. 432, 531 A.2d 536 (1987). The record plainly shows that the WWMA board members desired to be paid for their services, that they adopted Painter's "vehicle for simplicity" and created six new officer positions, then gave each board member a paid officer position. Thus, the Commission's finding was supported by substantial evidence.

██ Mance and Painter's final argument is that the 1978 Act does not authorize the Commission to order the remedy of restitution. We agree. We have previously upheld Ethics Commission orders requiring a party to remit compensation received in violation of the 1978 Act. *Yocabet; McCutcheon v. State Ethics Commission*, 77 Pa.Commonwealth Ct. 529, 466 A.2d 283 (1983). In *Yocabet,* however, the petitioners did not question the propriety of the remedy ordered; they merely argued that the Commission should not have found them in violation of the Act. In *McCutcheon,* the petitioners "com-

plained about the sanction which the commission applied," *Id.* at 538, 466 A.2d at 288, but our opinion in that case does not indicate exactly what aspect of the sanction they disputed. In *McCutcheon,* the focus was on whether we should insist on the more stringent criminal sanctions contained in § 9(c) of the Act, which provides that the person who obtains improper financial gain must pay triple damages into the state treasury.

The precise question here of whether the Commission has authority to order restitution under the 1978 Act or whether it is limited to making recommendations to law enforcement officials pursuant to § 7(11) of the Act, 65 P.S. § 407(11), is one of first impression.[9] Our examination reveals that the 1978 Act makes absolutely no provision for restitution. Under the 1978 Act, the only remedy available to the Commission is to "make recommendations to law enforcement officials either for criminal prosecution or dismissal of charges arising out of violations of this act." § 7(11), 65 P.S. § 407(11). The Commission did not become authorized to impose the remedy of restitution until 1989, when § 7(13) of the Act, 65 P.S. § 407(13), was enacted.[10] The 1989 Act does not apply to violations committed prior to its effective date. § 9 of the Act of June 26, 1989, P.L. 26. In this case, the activities occurred prior to the effective date of the 1989 Act.

In accordance with the above, we reverse the Commission with regard to Rhodes, Rebottini, and Mance as NHTMA board members. We affirm the Commission to the extent that it concludes that Mance and Painter's actions as WWMA board members violated § 3(a) of the 1978 Ethics Act but vacate those portions of the Commission orders requiring Mance and Painter to pay restitution, and remand for further proceedings consistent with this opinion.

**9.** *But see Commonwealth v. Fee,* 116 Pa.Commonwealth Ct. 183, 540 A.2d 1385 (1988), *reversed,* 523 Pa. 377, 567 A.2d 645 (1989).

**10.** This section provides, in pertinent part, that:

Any order resulting from a finding that a public official or public employee has obtained a financial gain in violation of this act may require the restitution plus interest of that gain to the appropriate governmental body.

## ORDER

AND NOW, this 23rd day of November, 1993, we hereby order that:

1. Order No. 863 of the State Ethics Commission, dated September 18, 1992, stating that Donald Rhodes' acts as a member of the North Huntingdon Township Municipal Authority violated § 3(a) of the 1978 Ethics Act, is REVERSED.

2. Order No. 864 of the State Ethics Commission, dated September 18, 1992, stating that Robert Rebottini's acts as a member of the North Huntingdon Township Municipal Authority violated § 3(a) of the 1978 Ethics Act, is REVERSED.

3. Order No. 861 of the State Ethics Commission, dated September 18, 1992, is AFFIRMED to the extent that it states that Terry Painter's actions as a member of the Western Westmoreland Municipal Authority violated § 3(a) of the 1978 Ethics Act and VACATED to the extent that it orders Terry Painter to pay restitution in the amount of $6,150.00 to the Western Westmoreland Municipal Authority. We remand to the State Ethics Commission for further proceedings consistent with the foregoing opinion.

4. Order No. 862 of the State Ethics Commission dated September 18, 1992 is AFFIRMED to the extent that it states that Thomas Mance's actions as a member of the Western Westmoreland Municipal Authority violated § 3(a) of the 1978 Ethics Act; REVERSED to the extent that it states that Thomas Mance's acts as a member of the North Huntingdon Township Municipal Authority violated § 3(a) of the 1978 Ethics Act; and VACATED to the extent that it orders Thomas Mance to pay restitution in the amount of $3,350.00 to the Western Westmoreland Municipal Authority. We remand to the State Ethics Commission for further proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.